Receipt number AUSFCC-7992202

## THE UNITED STATES COURT OF FEDERAL CLAIMS

|  |  |
|---|---|
| JILLIAN LESKO, | Civil Action No. ___22-715__ C |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR DAMAGES** |
| v. | **1. VIOLATION OF NURSE ADDITIONAL PAY STATUTE (38 U.S.C. § 7453)** |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

## <u>INTRODUCTION</u>

1.      This civil action is brought by employees of the United States of America ("United States" or "Defendant") who work as registered nurses for the Indian Health Service ("IHS"), which is a division of the Department of Health and Human Services ("HHS"). Plaintiff brings this action on behalf of herself and all others similarly situated current and former registered nurses ("RN") employed by the IHS who have not received additional pay to which they are entitled, including overtime pay at 1.5 times their regular rate of pay, comp time credit, night differential pay, weekend premium pay and/or holiday pay, pursuant to 38 U.S.C. § 7453.

1

## JURISDICTION AND VENUE

2.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1491(a)(1) (Tucker Act) and 28 U.S.C. § 2501.

3.     Venue is proper in this Court pursuant to 28 U.S.C. § 1491(a)(1).

## THE PARTIES

4.     Plaintiff Jillian Lesko was employed by Defendant as an advanced practice registered nurse ("APRN") at the IHS in Phoenix, Arizona, and Wadsworth, Nevada, during the period November 9, 2020 through July 2, 2021.

5.     At all relevant times, Plaintiff and other class members were employed as RNs as defined by 38 U.S.C. §§ 7401(1) and 7453.

6.     Defendant and its involved agency are, and at all material times has been, a "public agency" and "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d) and § 203(x), and an executive agency within the meaning of 5 U.S.C. §§ 105, 5541, 5596. Defendant has acted with respect to the allegations made in this complaint principally though the IHS, a division of the HHS.  At all relevant times, the agents, officers, and representatives of Defendant who took the actions at issue were duly authorized by Defendant to take those actions, and thus, Defendant is ultimately responsible for the unlawful actions alleged in this Complaint.

## GENERAL ALLEGATIONS

7.     Title 38 of the United States Code provides special pay provisions used to recruit and retain employees in certain health care occupations, including RNs.  38 U.S.C. § 7401 *et seq*. Title 38 exists to allow the United States government to remain competitive with private sector

health care providers and facilities regarding employee recruitment, pay, compensation and other benefits.

8.      The United States Office of Personnel Management ("OPM") is an independent agency of the United States Federal Government that manages non-elected and non-military public sector employees.  The agency provides federal human resources policy, oversight and support for most federal employees.  As part of that support, OPM provides guidelines and policies for General Schedule employees as they relate to pay, overtime, holiday pay, nighttime pay, weekend pay, among other benefits.

9.      Compensation and benefits for the majority of General Schedule federal employees are governed by Title 5.  However, in certain circumstances, the OPM has authority to delegate the use of other statutory compensation provisions to federal agencies through written agreement, including Title 38.

10.      On February 28, 2019, the OPM and the Department of Health and Human Services executed a Delegation Agreement ("Delegation") regarding HHS's use and adoption of Title 38 provisions.  Attached hereto as Exhibit A and incorporated by reference is a true and correct copy of the Delegation.

11.      Pursuant to the Delegation, OPM delegated to HHS the use and adoption of certain Title 38 provisions that are primarily available to the Department of Veterans Affairs. The provisions listed in the Agreement are those directly related to pay rates and systems, premium pay, classification, and hours of work, as provided in 5 U.S.C. § 5371.

12.      Absent the Delegation, pay rates, systems, premium pay and other federal employee compensation benefits would be governed by Title 5, which provides a different framework and lesser rates of pay for overtime, holiday pay, weekend pay, and other federal

employee compensation benefits.  Pursuant to the Delegation, OPM authorized HHS to utilize, and HHS did in fact utilize, Title 38, which provides greater rates of pay and benefits to health care workers, including but not limited to, RNs.

13.    Pursuant to the Delegation, IHS, a division of HHS, utilizes Title 38 provisions for RNs and other health care professionals.  More specifically, Plaintiff and other class members were and/or are employed as RNs as defined by 38 U.S.C. §§ 7401(1) and 7453 and are hired and compensated pursuant to Title 38 instead of Title 5.  In fact, Plaintiff's pay stubs code her compensation as being paid pursuant to "T38," which refers to Title 38.

14.    The statutory requirements outlined in 38 U.S.C. § 7451 provide for increases in the rates of basic pay for RNs when compared to Title 5 employees.

15.    Additionally, § 7453 requires "additional pay" for Title 38 RNs regarding overtime compensation, compensatory time off in lieu of pay ("Comp Time"), night time pay and holiday pay.  38 U.S.C. §§ 7453(b)(c)(d) and (e).

16.    Night time pay requires 10% extra pay for hours worked at night, as defined by statute.  38 U.S.C. § 7453(b).

17.    Weekend pay requires 25% extra pay for hours worked on weekends, as defined by statute.  38 U.S.C. § 7453(c).

18.    Holiday pay requires an additional hour of pay for each hour worked on a federal holiday, as defined by statute.  38 U.S.C. § 7453(d).

19.    38 U.S.C. § 7453(e) requires overtime pay for RNs who work more than 40 hours in an administrative workweek or in excess of eight consecutive hours in a single day. The overtime rates shall be one and one-half times such nurse's hourly rate of basic pay.

20.     To be compensable, overtime work must be at least 15 minutes in duration.  38 U.S.C. § 7453(e)(2).

21.     The additional pay provisions of 38 U.S.C. §§ 7453(b)(c)(d) and (e) are calculated using a nurse's "hourly rate of basic pay" as the foundation.

22.      To determine a nurse's "hourly rate of basic pay," 38 U.S.C. § 7453(f) requires that a nurse's annual rate of basic pay be divided by 2,080 hours of annual work.

23.     Plaintiff and the Class alleged herein that they are not paid in compliance with the additional pay provisions outlined in U.S.C. § 7453(b)-(e).  Pursuant to the OPM's delegation of authority, IHS has specifically hired and categorized Plaintiff and class members as Title 38 employees, yet, IHS has failed to pay them pursuant to the Title 38 increased pay provisions and instead has paid Plaintiff and the Class according to the lesser pay provisions of Title 5.  Among other things, pay records of Plaintiff during the relevant statutory period show that her basic hourly rate of pay is calculated by dividing her annual rate of basic pay by *2,087* hours of annual work, instead of the required 2,080 hours.  Although using 2,087 as the denominator in determining Plaintiff's and class members' hourly rate of basic pay would be proper if the workers were being paid according to Title 5, it is improper because the workers have been categorized and are to be paid in accordance with Title 38.

24.     In light of IHS's miscalculation of Plaintiff's and class members' hourly rates of basic pay during the relevant statutory period, IHS has also miscalculated all payments provided to Plaintiff and the Class for any and all additional pay earned pursuant to 38 U.S.C. §§ 7453(b)-(e).

25.     Simply put, each and every calculation made by IHS for additional pay earned by Title 38 RNs is incorrect because IHS calculated the employees' hourly rate of basic pay by

using the incorrect denominator of 2,087 hours instead of the statutorily required denominator of 2,080 hours. By using the incorrect denominator, IHS calculated a lower hourly rate of basic pay for all RNs and then applied that lower hourly rate when calculating additional pay outlined in 38 U.S.C. §§ 7453(b)-(c). Utilizing the lower hourly rate of basic pay resulted in Plaintiff and the Class receiving underpayments for all additional work performed under these subsections.

26.    Because IHS used incorrect hourly rates of basic pay when calculating night differential pay for Plaintiff and the Class, all payments made relating to night differential pay during the statutory period pursuant to 38 U.S.C. § 7453(b) were incorrect and lower than required by law. Plaintiff and the Class in fact worked many nighttime hours. Many IHS hospital facilities are staffed 24 hours a day, 7 days a week, requiring RN coverage at all times, including nighttime. Because this nighttime pay was miscalculated, Plaintiff and the Class suffered substantial monetary loss, and continue to suffer such financial loss.

27.    Because IHS used incorrect hourly rates of basic pay when calculating weekend differential pay for Plaintiff and the Class, all payments relating to weekend differential pay made during the statutory period pursuant to 38 U.S.C. § 7453(c) were incorrect and lower than required by law. Plaintiff and the Class in fact worked many weekend hours. Many IHS hospital facilities are staffed 24 hours a day, 7 days a week requiring RN coverage at all times, including weekends. Plaintiff estimates, based on review of her pay records, that she worked at least one weekend shift during her employment with IHS during the relevant statutory period. Because this weekend pay was miscalculated, Plaintiff and the Class suffered substantial monetary loss, and continue to suffer such financial loss.

28.    Because IHS used incorrect hourly rates of basic pay when calculating holiday pay for Plaintiff and the Class, all payments made relating to holiday pay during the statutory

period pursuant to 38 U.S.C. § 7453(d) were incorrect and lower than required by law. Plaintiff and the Class in fact worked many holiday hours. Many IHS hospital facilities are staffed 24 hours a day, 7 days a week requiring RN coverage at all times, including holidays. Plaintiff estimates, based on review of her pay records, that she worked on at least one federal holiday during her employment with IHS and during the relevant statutory period. Because this holiday pay was miscalculated, Plaintiff and the Class suffered substantial monetary loss, and continue to suffer such financial loss.

29.    Because IHS used incorrect hourly rates of basic pay when calculating overtime pay for Plaintiff and the Class, all payments made relating to overtime during the statutory period pursuant to 38 U.S.C. § 7453(e)(1) were incorrect and lower than required by law. Plaintiff and the Class in fact worked many overtime hours during the relevant statutory period. Many IHS hospital facilities are staffed 24 hours a day, 7 days a week. Coverage for patient care often requires RNs to work more than 40 hours in week or more than 8 hours in a single day. Because RNs worked tremendous amounts of overtime that was miscalculated, Plaintiff and the Class suffered substantial monetary loss, and continue to suffer such financial loss.

30.    In addition to miscalculating all additional pay earned by Title 38 nurses during the relevant statutory period, IHS willfully, deliberately and intentionally failed to pay its Title 38 nurses overtime for additional hours worked on a recurring and involuntary basis, significantly in excess of fifteen (15) minutes duration in a calendar day, and in excess of forty (40) hours in an administrative workweek, in excess of eight (8) hours in a workday, or in excess of their daily work requirement at an overtime rate of one and one-half times the hourly rate of pay or with compensatory time off. For example, Plaintiff worked shifts lasting 12 (twelve) hours in a single day and was not paid overtime for work done in excess of eight (8) hours on

those days, as required by 38 U.S.C § 7453(e)(1).  Plaintiff estimates, based on review of her pay records, that she worked at least 6 shifts lasting 12 hours in a single day during her employment with IHS during the relevant statutory period.

31.     On information and belief, other Class members also worked shifts lasting more than eight hours on a single day and were not paid overtime for work done in excess of eight (8) hours on those days.

32.     During the relevant statutory period, including but not limited to early 2020 through late 2021, IHS facilities were extremely busy due to the Covid-19 pandemic.  As a result, nurses were required to work long hours, well over their regularly scheduled tours of duties to provide necessary and required Covid-19 pandemic related patient care.  This additional work was often not paid and lasted well over 15 minutes in duration and occurred at least weekly and often daily throughout nearly all of 2020 and most of 2021.  Accordingly, IHS willfully, deliberately and intentionally failed to pay its Title 38 nurses overtime for additional, Covid-19 pandemic related hours worked on a recurring and involuntary basis, significantly in excess of fifteen (15) minutes duration in a calendar day, and in excess of forty (40) hours in an administrative workweek, in excess of eight (8) hours in a workday, or in excess of their daily work requirement at an overtime rate of one and one-half times the hourly rate of pay or with compensatory time off.

33.     RNs can voluntarily request to receive compensatory time off in lieu of pay for overtime work.  Instead of receiving pay, RNs can receive a 1 hour of creditable time for each hour of overtime worked, instead of receiving pay.  RNs can use this time off at their discretion.  However, compensatory time off in lieu of pay is only permitted if a RN makes such a request voluntarily in writing.  38 U.S.C. § 7453(e)(3).

34.    Plaintiff and the Class were also routinely required to take compensatory time in lieu of overtime pay without their consent and without them having voluntarily requested such comp time credit in writing as required by law.  Plaintiff and the Class were routinely and regularly informed by supervisors that overtime pay was not approved and/or allowed in many circumstances.  When overtime pay was not permitted or approved, but work was required to be completed after regular tours of duty, Plaintiff and the Class were required to receive Comp Time credit instead of actual pay.  Plaintiff and the Class were required to submit such overtime time as Comp Time, and did not request this Comp Time voluntarily.  Rather, Plaintiff and the Class were told that Comp Time was the only option.  In these instances, Plaintiff's and the Class' submission in writing of any Comp Time credit hours in lieu of overtime pay did not comply with statutory requirements that Comp Time credit be "voluntarily requested in writing" because Plaintiff and the Class were told by superiors that this was the only means to obtain credit for this work.  Plaintiff estimates, based on review of her pay records, that she was required to receive approximately 1-2 days of compensatory time off in lieu of pay during her employment with IHS and during the relevant statutory period.

## CLASS ACTION ALLEGATIONS

35.    Plaintiff incorporates and references herein the allegations of Paragraphs 1 through 34 of the Complaint as if fully set forth herein.

36.    Plaintiff seeks to represent the Class of persons defined as follows:  All individuals employed by the Indian Health Service as Title 38 RNs, including RNs, APRNs, nurse practitioners, clinical nurse specialists and nurse anesthetists, who were employed within six (6) years preceding the filing of the Complaint and not paid in compliance with 38 U.S.C. §§ 7453 ("the Class").

37.    This action is properly maintained as a class action under Rules 23(a) and 23(b) of the Rules of the United States Court of Federal Claims ("RCFC").

38.    The Class is so numerous that joinder of all members as plaintiffs is impracticable.  Plaintiff reasonably estimates that the pool of potential class members is in excess of 1,000 present and former employees.

39.    There are common questions of law and fact that affect the members of the Class and predominate over any questions affecting only individual members.  The primary legal and factual questions that are common and predominate this case, include, but are not limited to the following:

- Whether Defendant denied Plaintiff and the Class all wages owed, including but not limited to overtime to which they were entitled pursuant to 38 U.S.C. §§ 7453;

- Did IHS categorize RNs as Title 38 pursuant to the Delegation but fail to pay them as required by statute in accordance with the terms of Title 38 and the Delegation and instead pay them at the lower rates of Title 5;

- Whether Defendant miscalculated Plaintiff's and the Class' hourly rates of basic pay when making earnings calculations pursuant to 38 U.S.C. §§ 7453;

- Whether Defendant's practices outlined above individually or collectively violated 38 U.S.C. §§ 7453;

- The effect upon and the extent of damages suffered by Plaintiff and the Class and the appropriate amount of compensation to which they are entitled.

40.    Plaintiff's claims are typical of the claims of the Class, and Plaintiff has no interests adverse to or in conflict with those of other members of the Class.

10

41.     Plaintiff will fairly and adequately protect the interests of the Class.  She has retained competent counsel experienced in class action litigation and in litigation involving pay statues.

42.     A class action is superior to other available means for the fair and efficient adjudication of this controversy.  Individual joinder of all plaintiffs is not practicable, and questions of law and fact common to all plaintiffs predominate over any questions affecting only each plaintiff.  Each plaintiff has been damaged and is entitled to recovery by reason of Defendant's illegal and unlawful payments pursuant to Title 38.  The Defendant's wage payments to Plaintiff and the Class have been based on uniform policies and procedures that apply equally to Plaintiff and the Class.  Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system

43.     The nature of this action and the nature of the laws available to the Class make the class action format a particularly efficient and appropriate procedure to afford relief to the Class.  Further, this case involves a large number of individual employees possessing claims with common issues of law and fact.  If each employee were required to file an individual lawsuit, the Defendant would necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual plaintiff with its superior financial and legal resources.  Requiring each class member to pursue an individual remedy would also discourage the assertion of lawful claims by employees who would be disinclined to pursue an action against their present and/or former employer for an appreciable and justifiable fear of retaliation and permanent damage to their careers at present and/or subsequent employment.  Proof of a common practice or factual pattern, of which the Plaintiff has experienced, is

representative of the Class mentioned herein and will establish the right of each of the members of the class to recovery on the claims alleged herein.

## COUNT 1

### VIOLATION OF NURSE ADDITIONAL PAY STATUTE

### 38 U.S.C. § 7453

### BY PLAINTIFF AND THE CLASS AGAINST INDIAN HEALTH SERVICE

44.    Plaintiff incorporates the allegations of Paragraphs 1 through 43 of the Complaint as if fully set forth herein.

45.    38 U.S.C. §§ 7453(b)(c)(d) and (e) require that registered nurses receive additional pay for overtime, night time differential pay, weekend differential pay and holiday pay.

46.    38 U.S.C. § 7453(e)(3) requires, "Compensatory time off in lieu of pay for service performed under the provisions of this subsection shall not be permitted, except as voluntarily requested in writing by the nurse in question."

47.    Defendant wrongfully, willfully, deliberately and intentionally failed to correctly pay Plaintiff and the Class all money earned pursuant to 38 U.S.C. §§ 7453(b)(c)(d) and (e) because Defendant miscalculated Plaintiff's and the Class' hourly rates of basic pay by using the incorrect denominator of 2,087 hours instead of the statutorily required 2,080 hours.  Because Defendant utilized an incorrect and lower hourly rate of basic pay when making additional pay calculations, Plaintiff and the Class received underpayments for all additional work performed under Sections 7453(b)(c)(d) and (e).

48.    Defendant wrongfully, willfully, deliberately and intentionally failed to pay its Title 38 nurses overtime for additional hours worked on a recurring and involuntary basis, significantly in excess of fifteen (15) minutes duration in a calendar day, and in excess of forty

(40) hours in an administrative workweek, in excess of eight (8) hours in a workday, or in excess of their daily work requirement at an overtime rate of one and one-half times the hourly rate of pay or with compensatory time off.

49.    More specifically, during the relevant statutory period, including but not limited to early 2020 through late 2021, IHS facilities were extremely busy due to the Covid-19 pandemic.  As a result, nurses were required to work long hours, well over their regularly scheduled tours of duties to provide necessary and required Covid-19 pandemic related patient care.  This additional work was often not paid and lasted well over 15 minutes in duration and occurred at least weekly and often daily throughout nearly all of 2020 and most of 2021. Accordingly, IHS willfully, deliberately and intentionally failed to pay its Title 38 nurses overtime for additional, Covid-19 pandemic related hours worked on a recurring and involuntary basis, significantly in excess of fifteen (15) minutes duration in a calendar day, and in excess of forty (40) hours in an administrative workweek, in excess of eight (8) hours in a workday, or in excess of their daily work requirement at an overtime rate of one and one-half times the hourly rate of pay or with compensatory time off.

50.    Defendant wrongfully, willfully, regularly and routinely informed Plaintiff and the Class that overtime pay was not approved, but overtime work was required.  In these instances, Plaintiff and the Class were required to submit requests for Comp Time credit in lieu of pay.  These requests were not voluntary because Plaintiff and the Class were informed this was the only option for receiving compensation for the overtime worked.  Defendant accordingly violated provisions of 38 U.S.C. § 7453(e)(3).

51.    Plaintiff and the Class have been financially damaged by IHS's failure to pay all compensation due pursuant to 38 U.S.C. § 7453 and are entitled to recover from Defendant all

monies due, reasonable attorneys' fees and costs of this action pursuant to 38 U.S.C. § 7453 and 5 U.S.C. § 5596.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

A. Certify this case as a class action pursuant to RCFC 23(a)(b), approve Plaintiff as the class representative, approve the undersigned attorneys as counsel for the Class, and require Defendant to issue notice of this action to all members of the Class;

B. Declare that Defendant's conduct alleged herein to be in violation of Plaintiff's rights under 38 U.S.C. § 7453;

C. Order Defendant to cease failing to comply with 38 U.S.C. § 7453;

D. Enter judgment against Defendant for all back pay due to Plaintiff and the Class for all compensation due under 38 U.S.C. § 7453, 5 U.S.C. § 5596;

E. Award Plaintiff and the Class an adjustment for any negative State and Federal Income Tax consequences they may incur related to any award of any payment herein;

F. Award Plaintiff and the Class pre-judgment interest on any and all unpaid wages or other damages to which they may be entitled;

G. Award interest pursuant to 5 U.S.C. § 5596(b) on all above amounts;

H. Award reasonable attorneys' fees and the costs and disbursements of this action to be paid by Defendant to Plaintiff's counsel under 5 U.S.C. § 5596, the Back Pay Act; and

I. Grant such further and other relief as this Court deems just and proper.

Respectfully submitted,

Michael Morrison, Esq.
ALEXANDER MORISSON + FEHR LLP
1900 Avenue of the Stars, Suite 900
Los Angeles, California 90067
(310) 394-0888 – Phone
(310) 394-0811 – Fax
mmorisson@amfllp.com
Attorney of Record for Plaintiff

Dated:  June 27, 2022

**EXHIBIT "A"**

**DELEGATION AGREEMENT**

**U.S. Office of Personnel Management
and
Department of Health and Human Services**

The U.S. Office of Personnel Management (OPM), under the authority of sections 1104 and 5371 of title 5, United States Code, authorizes the Department of Health and Human Services (HHS) to use certain personnel authorities for health care occupations under 38 U.S.C. chapter 74, subject to the requirements and restrictions herein.  For purposes of this agreement, "health care occupations" means positions other than positions in the Senior Executive Service that provide direct patient-care services or services incident to direct patient-care services and which would be covered by 5 U.S.C. chapter 51 were it not for the provisions of this agreement.

OPM is delegating to HHS discretionary use of certain title 38 provisions that are primarily available to the Department of Veterans Affairs.  If HHS uses one of the authorities in this delegation agreement, the comparable authority in title 5 is waived.  The provisions listed are those directly related to pay rates and systems, premium pay, classification, and hours of work, as provided in 5 U.S.C. 5371.  HHS and OPM responsibilities are listed in the Statement of Responsibilities (Attachment A) and the Statement of Delegations (Attachment B).  The delegations are provided for in the Statement of Delegations (Attachment B).

All actions taken under this delegation agreement must conform to requirements of law and any regulations or instructions issued by OPM.  HHS may redelegate these authorities to the extent permitted by statutory provisions for the delegated authorities and agency internal delegations of authority.

The HHS official responsible for the overall administration of the delegated authorities is:

|  |  |
|---|---|
| Name: | J. Blair Duncan |
| Title: | Deputy Assistant Secretary, Human Resources Chief Human Capital Officer |
| Telephone: | (202) 260-2843 |
| Email: | blair.duncan@hhs.gov |
| Address: | 200 Independence Ave., SW. Suite 801, Room 22 Washington, DC  20201 |

The HHS official responsible for serving as subject matter expert on the delegated authorities and providing information to OPM is:

|   |   |
|---|---|
| Name: | Tricia D. Goldburn |
| Telephone Number: | (202) 815-7028 |
| Email Address: | tricia.goldburn@hhs.gov |
| Address: | 200 Independence Ave., SW., Suite 801 |
|   | Washington, DC 20201 |

HHS may terminate this agreement at any time with 90 days advance notice to OPM. OPM may terminate this delegation agreement at any time for reasons such as, but not limited to: (a) evidence of inequitable treatment of employees, (b) identifiable violations of statutory requirements and/or abuses of merit system principles in 5 U.S.C. 2301, or (c) failure to coordinate with other participating agencies and OPM. In such cases, HHS agrees to immediate OPM supervision of its delegated health care personnel authorities to ensure no further abuses or to provide for an orderly phase-out of the authority.

Effective Date: This agreement will become effective on the date signed by HHS.

Under 5 U.S.C. 5371, the authority delegated to HHS to use certain personnel provisions of title 38, United States Code, will remain in effect through June 30, 2022.

(Signature)

Mark D. Reinhold
Associate Director
Employee Services
U.S. Office of Personnel Management

FEB 2 8 2019

DATE

(Signature)

J. Blair Duncan
Deputy Assistant Director
for Human Resources
Department of Health and
Human Services

3/6/19

DATE

2

Attachment A

```
┌─────────────────────────────────────────────────────────────────┐
│              STATEMENT OF RESPONSIBILITIES FOR                     │
│           PROVISIONS AVAILABLE UNDER 5 U.S.C. 5371                 │
└─────────────────────────────────────────────────────────────────┘
```

The following Department of Health and Human Services (HHS) and U.S. Office of Personnel Management (OPM) responsibilities apply to the overall program for delegated health-care personnel authorities under 5 U.S.C. 5371 and 38 U.S.C. chapter 74 and must be adhered to accordingly; each delegated provision references additional HHS and OPM responsibilities. In implementing any of these provisions, the intent of title 38 should be taken into consideration. Each provision's relationship to other provisions, such as retirement and the Fair Labor Standards Act, must be adhered to accordingly.

I.    <u>HHS Responsibilities for the Overall Program</u>

    A.    Develop appropriate written policies and procedures, apply them fairly and consistently, and assure they meet the following requirements:

        o    Maintain quality staffing levels among facilities;

        o    Abide by statutory requirements including merit system principles; and

        o    Avoid unwarranted competition with other agencies using these authorities.

    B.    Issue written regulations and/or guidelines and consult with employee organizations, as appropriate.

    C.    Take such action as OPM may require to correct any action(s) contrary to law, regulations, or this delegation agreement.

    D.    Participate and cooperate in the activities of the Interagency Committee on Health Care Occupations and attend any required Committee meetings. Discuss major pay authorities for which consensus must be reached prior to implementation as specified in the agreement under the specific provisions.

    E.    Share policy information and pay survey data with other agencies using these authorities. Minimize the burden on the non-Federal sector by sharing survey information with other Federal health-care employers and preventing duplicative pay surveys. Upon request, provide OPM with reports and data from surveys of non-Federal employers.

    F.    To the extent that authorities are redelegated within HHS, assure that all provisions of this agreement are met by the designees to which the authorities are delegated.

G.  Maintain auditable program records.  Provide OPM with information and access to records upon request.

H.  Maintain an internal review program to monitor use of these provisions.  Provide OPM with program information and access to records upon request.

I.  Prior to renewal of the delegation agreement, participate in OPM's evaluation of the HHS program and policies, including the use of each provision, by health-care facility name and location and type of occupation.  Provide OPM with program policies and documentation upon request.

II. <u>OPM Responsibilities for Overall Program</u>

A.  Establish the Interagency Committee on Health Care Occupations.  Assure that the Committee meets as needed and participate in the meetings.  Assist the Committee in establishing operating procedures as needed.  The Committee will include the Departments of Defense, Health and Human Services, Justice, Veterans Affairs, Homeland Security; the Armed Forces Retirement Home, the U.S. Agency for International Development, the U.S. Office of Personnel Management; and any other agencies receiving these delegated authorities.

B.  Assure coordination among the participating agencies and sharing of information among them.

C.  Provide technical assistance on the delegated authorities, as requested.

D.  Monitor each agency's programs to ensure compliance with 5 U.S.C. 5371 including written policies and procedures developed for each provision and the agency's internal audit programs.

E.  Prior to renewal of the delegation agreement, evaluate each agency's program, policies, and documentation for compliance with law.

F.  Monitor legislative changes in title 38, United States Code, assist agencies in complying with the changes, and draft amendments to this delegation agreement as appropriate.

Attachment B

+-----------------------------------------------------------+
| **STATEMENT OF DELEGATIONS FOR**                          |
| **PROVISIONS AVAILABLE UNDER 5 U.S.C. 5371**              |
+-----------------------------------------------------------+

The U.S. Office of Personnel Management (OPM) delegates to the HHS the following title 38 provisions as provided in 5 U.S.C. 5371:

- *Special Salary Rate Authority* -- § 7455(a)(1), (a)(2)(A) and (B), (b), (c), and (d)
- *Baylor Plan and Alternate Work Schedules* -- § 7456 and § 7456A
- *Premium Pay* -- § 7453, § 7454, and § 7457(a) and (b)
- *Authority to Establish Qualifications* -- § 7402(a), (b), (d), and (f)
- *Qualification-based Grading System* -- § 7403(a), (b)(4), (c), (e) and (f)(1)
- *Head Nurse Pay and Nurse Executive Special Pay* -- § 7452(a)(2) and (g)
- *Hours of Employment* -- § 7421(a) and § 7423(a)
- *Pay for Physicians, Podiatrists, and Dentists* -- § 7431(a), (b), (c), (d), (e), (f) and (h); § 7432; and § 7433[1]
- *Nurse Locality Pay System* -- § 7451(a), (b), (c), (d), (e), and (g)
- *Special Incentive Pay for Pharmacist Executives* -- § 7410(b).

Each delegated provision references the title 38 citation, occupations covered, and HHS and OPM responsibilities.

---

[1] Public Law 116-12 amended 38 U.S.C. 7431, 7432, and 7433 to cover podiatrists under the authority for base, performance, and market pay for physicians and dentists. These amendments were effective on April 8, 2019.

I.     Special Salary Rate Authority

Citation:

**38 U.S.C. 7455(a)(1), (a)(2)(A) and (B), (b), (c), and (d)**

**§ 7455.  Increases in rates of basic pay.**

**(a)(1)** Subject to subsections (b), (c), and (d), when the Secretary determines it to be necessary in order to obtain or retain the services of persons described in paragraph (2), the Secretary may increase the minimum, intermediate, or maximum rates of basic pay authorized under applicable statutes and regulations.  Any increase in such rates of basic pay—
**(A)** may be made on a nationwide basis, local basis, or other geographic basis; and
**(B)** may be made—
**(i)** for one or more of the grades listed in the schedules in subsection (b)(1) of section 7404 of this title;
**(ii)** for one or more of the health personnel fields within such grades; or
**(iii)** for one or more of the grades of the General Schedule under section 5332 of title 5.
**(2)** Paragraph (1) applies to the following:
**(A)** Individuals employed in positions listed in paragraphs (1) and (3) of section 7401 of this title.
**(B)** Health-care personnel who—
**(i)** are employed in the Administration (other than administrative, clerical, and physical plant maintenance and protective services employees);
**(ii)** are paid under the General Schedule pursuant to section 5332 of title 5;
**(iii)** are determined by the Secretary to be providing either direct patient-care services or services incident to direct patient-care services; and
**(iv)** would not otherwise be available to provide medical care and treatment for veterans.

**(b)** Increases in rates of basic pay may be made under subsection (a) only in order—
**(1)** to provide pay in an amount competitive with, but not exceeding, the amount of the same type of pay paid to the same category of personnel at non-Federal facilities in the same labor market;
**(2)** to achieve adequate staffing at particular facilities; or
**(3)** to recruit personnel with specialized skills, especially those with skills which are especially difficult or demanding.

**(c)(1)** Subject to paragraph (2), the amount of any increase under subsection (a) in the minimum rate for any grade may not (except in the case of nurse anesthetists, licensed practical nurses, licensed vocational nurses, nursing positions otherwise covered by title 5, pharmacists, and licensed physical therapists) exceed the maximum rate of basic pay (excluding any locality-based comparability payment under section 5304 of title 5 or similar provision of law) for the grade or level by more than 30 percent.
**(2)** No rate may be established under this section in excess of the rate of basic pay payable for level IV of the Executive Schedule.

**(d)(1)** In the exercise of the authority provided in subsection (a) with respect to personnel described in subparagraph (B)...of paragraph (2) of that subsection to increase the rates of basic pay for any category of personnel not appointed under subchapter I, the Secretary shall, not less than 45 days before the effective date of a proposed increase, notify the President of the Secretary's intention to provide such an increase.

**(2)** Such a proposed increase shall not take effect if, before the effective date of the proposed increase, the President disapproves such increase and provides the appropriate committees of the Congress with a written statement of the President's reasons for such disapproval.

**(3)** If, before that effective date, the President approves such increase, the Secretary may advance the effective date to any date not earlier than the date of the President's approval.

Occupations Covered:

Individuals employed in the following positions performing direct patient care services and services incident to direct patient care services (as prescribed by 5 U.S.C. 5371):

- Positions covered by 38 U.S.C. 7401(1)--physicians, dentists, podiatrists, chiropractors, optometrists, registered nurses (and nurse anesthetists), physician assistants, and expanded-function dental auxiliaries.

- Positions covered by 38 U.S.C. 7401(3)-- audiologists, speech pathologists, and audiologist-speech pathologists, biomedical engineers, certified or registered respiratory therapists, dietitians, licensed physical therapists, licensed practical or vocational nurses, nurse assistants, medical instrument technicians, medical records administrators or specialists, medical records technicians, medical and dental technologists, dental hygienists, dental assistants, nuclear medicine technologists, occupational therapists, occupational therapy assistants, kinesiotherapists, orthotist-prosthetists, pharmacists, pharmacy technicians, physical therapy assistants, prosthetic representatives, psychologists, diagnostic radiologic technicians, therapeutic radiologic technicians, social workers, marriage and family therapists, licensed professional mental health counselors, blind rehabilitation specialists, blind rehabilitation outpatient specialists, and such other classes of health care occupations as the Secretary considers necessary for the recruitment and retention needs of the Department subject to the requirements in 38 U.S.C. 7401(3)(A).

- Individuals employed in positions that meet the criteria specified in 38 U.S.C. 7455(a)(2)(B)--health-care personnel who are employed in the Administration (other than administrative, clerical, and physical plant maintenance and protective services employees) who would be paid under the General Schedule pursuant to section 5332 of title 5 were it not for the provisions of this agreement, and are determined by the Secretary to be providing either direct patient-care services or services incident to direct patient-care services, and would not otherwise be available to provide medical care and treatment for veterans.

7

<u>HHS Responsibilities:</u>

A.    HHS may not use the special salary rate authority for registered nurses and nurse anesthetists, as in the delegation provisions of section 7455, in conjunction with nurse locality pay, as in the delegation provisions of 38 U.S.C. 7451.

B.    When conducting pay surveys for the purpose of adjusting pay rates under 38 U.S.C. 7455, HHS will obtain a representative sample of the full range of rates paid for the position(s) in the relevant labor market.  HHS will minimize the burden on the non-Federal sector by sharing pay survey data with other Federal health-care employers and preventing duplicative pay surveys.  Upon request, HHS will provide OPM with pay survey reports.

C.    For each instance in which HHS  proposes to increase rates of basic pay for occupations covered by section 7455(a)(2)(B) and Executive Order 12797, HHS must provide OPM with the following information:

   1.    A completed Form 1397, Special Rate Request Form, or alternative form for each increase in rates of basic pay proposed by HHS.

   2.    A transmittal letter to OPM that specifies the proposed effective date.  The letter should include a statement that provides sufficient background as to the facts and circumstances which necessitate the proposal of special salary rates.

   3.    A report on contacts HHS has made with other Federal agencies that might be affected by the proposed increase in rates of basic pay.  Included in the report will be a summary of available information on what actions, if any, the other agencies will take or have taken and what efforts have been taken to share pay survey data with other Federal agencies.

   4.    Regarding changes in rates made in connection with an HHS  review of existing authorizations subject to OPM oversight, prior to the effective date of a statutory increase in the General Schedule, HHS  may increase existing authorizations equal to and simultaneous with the General Schedule increase without further OPM notification.  HHS must apply the procedures outlined in HHS responsibilities (C) (1), (2), and (3) for authorizations for which HHS is proposing a greater or smaller increase, or changed grade or geographic coverage.

   5.    The required documentation for each proposed pay action must be submitted initially to the Deputy Associate Director for Pay and Leave, Employee Services, Room 7H31, Office of Personnel Management, Washington, DC  20415-8200.

OPM Responsibilities:

A.     For occupations listed in paragraphs (1) and (3) of 38 U.S.C. 7401 and nurse anesthetists, OPM will assure coordination and information sharing among the departments and agencies using this provision.

B.     For occupations covered by section 7455(a)(2)(B) and Executive Order 12797, OPM will provide HHS with written notice of its decision on each proposed pay action within 45 days, as stated in section 7455(d)(1). If OPM reviews the information in less than 45 days, HHS may authorize an earlier effective date than initially proposed.

II.     Baylor Plan and Alternative Work Schedules

Citation:

**38 U.S.C. 7456**

**§ 7456.  Nurses: special rules for weekend duty.**

**(a)** Subject to subsection (b), if the Secretary determines it to be necessary in order to obtain or retain the services of nurses at any Department health-care facility, the Secretary may provide, in the case of nurses appointed under this chapter and employed at such facility, that such nurses who work two regularly scheduled 12-hour tours of duty within the period commencing at midnight Friday and ending at midnight the following Sunday shall be considered for all purposes (except computation of full-time equivalent employees for the purposes of determining compliance with personnel ceilings) to have worked a full 40-hour basic workweek.

**(b)(1)** Basic and additional pay for a nurse who is considered under subsection (a) to have worked a full 40-hour basic workweek shall be subject to paragraphs (2) and (3).
**(2)** The hourly rate of basic pay for such a nurse for service performed as part of a regularly scheduled 12-hour tour of duty within the period commencing at midnight Friday and ending at midnight the following Sunday shall be derived by dividing the nurse's annual rate of basic pay by 1,248.
**(3)(A)** Such a nurse who performs a period of service in excess of such nurse's regularly scheduled two 12-hour tours of duty is entitled to overtime pay under section 7453(e) of this title, or other applicable law, for officially ordered or approved service performed in excess of eight hours on a day other than a Saturday or Sunday or in excess of 24 hours within the period commencing at midnight Friday and ending at midnight the following Sunday.
**(B)** Except as provided in subparagraph (C), a nurse to whom this subsection is applicable is not entitled to additional pay under section 7453 of this title, or other applicable law, for any period included in a regularly scheduled 12-hour tour of duty.

**(C)** If the Secretary determines it to be further necessary in order to obtain or retain the services of nurses at a particular facility, a nurse to whom this paragraph is applicable who performs service in excess of such nurse's regularly scheduled two 12-hour tours of duty may be paid overtime pay under section 7453(e) of this title, or other applicable law, for all or part of the hours of officially ordered or approved service performed by such nurse in excess of 40 hours during an administrative workweek.

**(c)** The Secretary shall prescribe regulations for the implementation of this section.

<u>Occupations Covered:</u>

Individuals employed as civilian registered nurses and nurse anesthetists. This provision may be extended to include health-care personnel other than those in Senior Executive Service positions performing direct patient-care services or services incident to direct patient-care services that would be covered by chapter 51 of title 5, United States Code, were it not for the provisions of this agreement.

<u>HHS Responsibilities:</u>

If the Secretary or his/her designee deems it necessary to provide registered nurses, nurse anesthetists, or employees at any HHS health-care facility who are employed in occupations that would be covered by 5 U.S.C. chapter 51 were it not for the provisions of this agreement with special rules for weekend duty, then he/she must authorize weekend duty schedules and payments in accordance with section 7456. HHS official policies that describe eligibility for the Baylor plan must be applied consistently to the occupations that the HHS determines will be covered by this provision and follow merit system principles.

<u>OPM Responsibilities:</u>

Periodically evaluate HHS use of this provision for compliance with law.

<u>Citation:</u>

**38 U.S.C. 7456A**

**§ 7456A. Nurses: alternate work schedules.**

**(a)** APPLICABILITY- This section applies to registered nurses appointed under this chapter.

**(b)** 72/80 WORK SCHEDULE- **(1)(A)** Subject to paragraph (2), if the Secretary determines it to be necessary in order to obtain or retain the services of registered nurses at any Department health-care facility, the Secretary may provide, in the case of nurses employed at such facility, that such nurses who work six regularly scheduled 12-hour

tours of duty within a 14-day period shall be considered for all purposes to have worked a full 80-hour pay period.

**(B)** A nurse who works under the authority in subparagraph (A) shall be considered a 0.90 full-time equivalent employee in computing full-time equivalent employees for the purposes of determining compliance with personnel ceilings.

**(2)(A)** Basic and additional pay for a nurse who is considered under paragraph (1) to have worked a full 80-hour pay period shall be subject to subparagraphs (B) and (C).

**(B)** The hourly rate of basic pay for a nurse covered by this paragraph for service performed as part of a regularly scheduled 36-hour tour of duty within the work week shall be derived by dividing the nurse's annual rate of basic pay by 1,872.

**(C)** The Secretary shall pay overtime pay to a nurse covered by this paragraph who--

> **(i)** performs a period of service in excess of such nurse's regularly scheduled 36-hour tour of duty within an administrative work week;
>
> **(ii)** for officially ordered or approved service, performs a period of service in excess of 8 hours on a day other than a day on which such nurse's regularly scheduled 12-hour tour of duty falls;
>
> **(iii)** performs a period of service in excess of 12 hours for any day included in the regularly scheduled 36-hour tour of duty work week; or
>
> **(iv)** performs a period of service in excess of 40 hours during an administrative work week.

**(D)** The Secretary may provide a nurse to whom this subsection applies with additional pay under section 7453 of this title for any period included in a regularly scheduled 12-hour tour of duty.

**(3)** A nurse who works a work schedule described in this subsection who is absent on approved sick leave or annual leave during a scheduled 12-hour tour of duty shall be charged for such leave at a rate of ten hours of leave for every nine hours of absence.

**(c)** HOLIDAY PAY- A nurse working a work schedule under subsection (b) that includes a holiday designated by law or Executive order shall be eligible for holiday pay under section 7453(d) of this title for any service performed by the nurse on such holiday under such section.

**(d)** 9-MONTH WORK SCHEDULE FOR CERTAIN NURSES - **(1)** The Secretary may authorize a registered nurse appointed under section 7405 of this title, with the nurse's written consent, to work full time for nine months with 3 months off duty, within a fiscal year, and be paid at 75 percent of the full-time rate for such nurse's grade for each pay period of such fiscal year.

**(2)** A nurse who works under the authority in paragraph (1) shall be considered a 0.75 full-time equivalent employee in computing full-time equivalent employees for the purposes of determining compliance with personnel ceilings.

**(3)** Work under this subsection shall be considered part-time service for purposes of computing benefits under chapters 83 and 84 of title 5.

**(4)** A nurse who works under the authority in paragraph (1) shall be considered a full-time employee for purposes of chapter 89 of title 5.

**(e)** NOTIFICATION OF MODIFICATION OF BENEFITS - The Secretary shall provide each employee with respect to whom an alternate work schedule under this section may apply written notice of the effect, if any, that the alternate work schedule will have on the employee's health care premium, retirement, life insurance premium, probationary status, or other benefit or condition of employment. The notice shall be provided not later than 14 days before the employee consents to the alternate work schedule.

**(f)** REGULATIONS - The Secretary shall prescribe regulations to carry out this section.

<u>Occupations Covered:</u>

Individuals employed as civilian registered nurses.  This provision may be extended to include health-care personnel other than those in Senior Executive Service positions performing direct patient-care services or services incident to direct patient-care services that would be covered by chapter 51 of title 5, United States Code, were it not for the provisions of this agreement.

<u>HHS Responsibilities:</u>

A.      If the Secretary or his/her designee deems it necessary to provide registered nurses or employees at any HHS health-care facility who are employed in occupations that would be covered by 5 U.S.C. chapter 51 were it not for the provisions of this agreement with alternate work schedules pursuant to section 7456A, then he/she must authorize such schedules in accordance with section 7456A.  HHS 's official policies that describe eligibility for alternate work schedules under the provisions of section 7456A must be applied consistently to the occupations that HHS  determines will be covered by this provision and follow merit system principles.

B.      HHS may use one or both of the alternate work schedule provisions (i.e., 72/80 Work Schedule and the 9-Month Work Schedule) in section 7456A at a given time.

<u>OPM Responsibilities:</u>

Periodically evaluate HHS's use of this provision for compliance with law.

III.     <u>Premium Pay</u>

<u>Citation:</u>

**38 U.S.C. 7453**

**§ 7453.  Nurses: additional pay.**

**(a)** In addition to the rate of basic pay provided for nurses, a full-time nurse or part-time nurse shall receive additional pay as provided by this section.

**(b)** A nurse performing service, any part of which is within the period commencing at 6 postmeridian and ending at 6 antemeridian, shall receive additional pay for each hour of such service at a rate equal to 10 percent of the nurse's hourly rate of basic pay if at least four hours of such service fall between 6 postmeridian and 6 antemeridian.  When less than four hours of such service fall between 6 postmeridian and 6 antemeridian, the nurse shall be paid the differential for each hour of service performed between those hours.

**(c)** A nurse performing service, any part of which is within the period commencing at midnight Friday and ending at midnight Sunday, shall receive additional pay for each hour of such service at a rate equal to 25 percent of such nurse's hourly rate of basic pay.

**(d)** A nurse performing service on a holiday designated by Federal statute or Executive order shall receive for each hour of such service the nurse's hourly rate of basic pay, plus additional pay at a rate equal to such hourly rate of basic pay, for that holiday service, including overtime service.  Any service required to be performed by a nurse on such a designated holiday shall be deemed to be a minimum of two hours in duration.

**(e)(1)** A nurse performing officially ordered or approved hours of service in excess of 40 hours in an administrative workweek, or in excess of eight consecutive hours, shall receive overtime pay for each hour of such additional service.  The overtime rates shall be one and one-half times such nurse's hourly rate of basic pay.
**(2)** For the purposes of this subsection, overtime must be of at least 15 minutes duration in a day to be creditable for overtime pay.
**(3)** Compensatory time off in lieu of pay for service performed under the provisions of this subsection shall not be permitted, except as voluntarily requested in writing by the nurse in question.
**(4)** Any excess service performed under this subsection on a day when service was not scheduled for such nurse, or for which such nurse is required to return to the nurse's place of employment, shall be deemed to be a minimum of two hours in duration.
**(5)** For the purposes of this subsection, the period of a nurse's officially ordered or approved travel away from such nurse's duty station may not be considered to be hours of service unless—
**(A)** such travel occurs during such nurse's period of service; or
**(B)** such travel—
**(i)** involves the performance of services while traveling,
**(ii)** is incident to travel that involves the performance of services while traveling,
**(iii)** is carried out under arduous conditions as determined by the Secretary, or
**(iv)** results from an event which could not be scheduled or controlled administratively.

**(f)** For the purpose of computing the additional pay provided by subsections (b), (c), (d), or (e), a nurse's hourly rate of basic pay shall be derived by dividing such nurse's annual rate of basic pay by 2,080.

(**g**) When a nurse is entitled to two or more forms of additional pay under subsections (b), (c), (d), or (e) for the same period of service, the amounts of such additional pay shall be computed separately on the basis of such nurse's hourly rate of basic pay, except that no overtime pay as provided in subsection (e) shall be payable for overtime service performed on a holiday designated by Federal statute or Executive order in addition to pay received under subsection (d) for such service.

(**h**) A nurse who is officially scheduled to be on call outside such nurse's regular hours or on a holiday designated by Federal statute or Executive order shall be paid for each hour of such on-call duty, except for such time as such nurse may be called back to work, at a rate equal to 10 percent of the hourly rate for excess service as provided in subsection (e).

(**i**) Any additional pay paid pursuant to this section shall not be considered as basic pay for the purposes of the following provisions of title 5 (and any other provision of law relating to benefits based on basic pay):
(**1**) Subchapter VI of chapter 55.
(**2**) Section 5595.
(**3**) Chapters 81, 83, 84, and 87.

(**j**)(**1**) Notwithstanding any other provision of law and subject to paragraph (2), the Secretary may increase the rates of additional pay authorized under subsections (b) through (h) if the Secretary determines that it is necessary to do so in order to obtain or retain the services of nurses.
(**2**) An increase under paragraph (1) in rates of additional pay—
(**A**) may be made at any specific Department health-care facility in order to provide nurses, or any category of nurses, at such facility additional pay in an amount competitive with, but not exceeding, the amount of the same type of pay that is paid to the same category of nurses at non-Federal health-care facilities in the same geographic area as such Department health-care facility (based upon a reasonably representative sampling of such non-Federal facilities); and
(**B**) may be made on a nationwide, local, or other geographic basis if the Secretary finds that such an increase is justified on the basis of a review of the need for such increase (based upon a reasonably representative sampling of non-Federal health-care facilities in the geographic area involved).

Occupations Covered:

Individuals employed as civilian registered nurses and nurse anesthetists that perform direct patient-care services or services incident to direct patient care services (as prescribed by 5 U.S.C. 5371).

HHS Responsibilities:

A.      If the Secretary or his/her designee deems it necessary to provide registered nurses and nurse anesthetists at any HHS  health-care facility with premium pay under any subsection of 38 U.S.C. § 7453, then he/she must authorize premium

pay in accordance with the delegated provisions of section 7453. HHS 's official policies that describe eligibility for and amounts of premium pay must be applied consistently to the occupations that HHS determines will be covered by this provision and follow merit system principles.

B.      If the Secretary or his/her designee deems it necessary to increase the rates of additional pay, as in 38 U.S.C. § 7453(j), in order to obtain or retain the services of nurses, then he/she must authorize increases in premium pay in accordance with § 7453(b) through (h). The Secretary must make the decision that an increase is justified on the basis of a review of the need for such increase, i.e., based upon a reasonably representative sampling of non-Federal health-care facilities in the geographic area involved. HHS's official policies that describe eligibility for and amounts of increases in premium pay must be applied consistently to the employees covered by this provision and follow merit system principles.

C.      HHS may use one or more of the premium pay provisions in section 7453 at a given time.

<u>OPM Responsibilities:</u>

A.      Periodically evaluate HHS's use of this provision for compliance with law.

B.      Ensure that the departments and agencies receiving this authority coordinate use of this provision and share information.

<u>Citation:</u>

**38 U.S.C. 7454**

**§ 7454. Physician assistants and other health care professionals: additional pay.**

**(a)** Physician assistants and expanded-function dental auxiliaries shall be entitled to additional pay on the same basis as provided for nurses in section 7453 of this title.

**(b)(1)** When the Secretary determines it to be necessary in order to obtain or retain the services of individuals in positions listed in section 7401(3) of this title, the Secretary may, on a nationwide, local, or other geographic basis, pay persons employed in such positions additional pay on the same basis as provided for nurses in section 7453 of this title.
**(2)** Health care professionals employed in positions referred to in paragraph (1) shall be entitled to additional pay on the same basis as provided for nurses in section 7453(c) of this title.
**(3)** Employees appointed under section 7408 of this title performing service on a tour of duty, any part of which is within the period commencing at midnight Friday and ending at midnight Sunday, shall receive additional pay in addition to the rate of basic pay

provided such employees for each hour of service on such tour at a rate equal to 25 percent of such employee's hourly rate of basic pay.

**(c)** The Secretary shall prescribe by regulation standards for compensation and payment under this section.

Occupations Covered:

Individuals employed in the following positions performing direct patient care services and services incident to direct patient-care services (as prescribed by 5 U.S.C. 5371):

- Individuals employed as physicians assistants and expanded-function dental auxiliaries.

- Positions covered by 38 U.S.C. 7401(3)— audiologists, speech pathologists, audiologist-speech pathologists, biomedical engineers, certified or registered respiratory therapists, dietitians, licensed physical therapists, licensed practical or vocational nurses, nurse assistants, medical instrument technicians, medical records administrators or specialists, medical records technicians, medical technologists, dental hygienists, dental assistants, nuclear medicine technologists, occupational therapists, occupational therapy assistants, kinesiotherapists, orthotist-prosthetists, pharmacists, pharmacy technicians, physical therapy assistants, prosthetic representatives, psychologists, diagnostic radiologic technicians, therapeutic radiologic technicians, social workers marriage and family therapists, licensed professional mental health counselors, blind rehabilitation specialists, blind rehabilitation outpatient specialists, and such other classes of health care occupations as the Secretary considers necessary for the recruitment and retention needs of the Department subject to the requirements in 38 U.S.C. 7401(3)(A).

- Other health-care personnel other than personnel in Senior Executive Service positions performing direct patient-care services or services incident to direct patient-care services who would be covered by chapter 51 of title 5, United States Code, were it not for the provisions of this agreement.

HHS Responsibilities:

A.      If the Secretary or his/her designee deems it necessary to provide employees at any HHS  health-care facility who are employed in the occupations covered under this provision with premium pay under any subsection of 38 U.S.C. 7453 and 7454, then he/she must authorize premium pay in accordance with the delegated provisions of sections 7453 and 7454.  HHS's official policies that describe eligibility for and amounts of premium pay must be applied consistently to the occupations that HHS determines will be covered by this provision and follow merit system principles.

16

B.      If the Secretary or his/her designee deems it necessary to increase the rates of additional pay under any subsection of 38 U.S.C. 7453 in order to obtain or retain the services of employees in occupations covered by this provision, then he/she must authorize increases in premium pay in accordance with 7453(b) through (h). The Secretary shall make the decision that an increase is justified on the basis of a review of the need for such increase, i.e., based upon a reasonably representative sampling of non-Federal health-care facilities in the geographic area involved. HHS's official policies that describe eligibility for and amounts of increases in premium pay must be applied consistently to the employees covered by this provision and follow merit system principles.

C.      HHS may use one or more of the premium pay provisions in sections 7453 and 7454 at a given time.

OPM Responsibilities:

A.      Periodically evaluate HHS's use of this provision for compliance with law.

B.      Ensure that the departments and agencies receiving this authority coordinate use of this provision and share information.

Citation:

**38 U.S.C. 7457(a) and (b)**

**§ 7457.  On-call pay.**

**(a)** The Secretary may pay an employee to whom this section applies pay at the rate provided in section 7453(h) of this title except for such time as the employee may be called back to work.

**(b)** This section applies to an employee who meets each of the following criteria:
**(1)** The employee is employed in a position listed in paragraph (3) of section 7401 of this title or meets the criteria specified in clauses (i), (ii), and (iii) of section 7455(a)(2)(B) of this title.
**(2)** The employee is employed in a work unit for which on-call premium pay is authorized.
**(3)** The employee is officially scheduled to be on-call outside such employee's regular hours or on a holiday designated by Federal statute or Executive order.

Occupations Covered:

Individuals employed in the following positions performing direct patient care services and services incident to direct patient-care services (as prescribed by 5 U.S.C. 5371):

17

- Positions covered by 38 U.S.C. § 7401(3)—audiologists, speech pathologists, audiologist-speech pathologists, biomedical engineers, certified or registered respiratory therapists, dietitians, licensed physical therapists, licensed practical or vocational nurses, nurse assistants, medical instrument technicians, medical records administrators or specialists, medical records technicians, medical technologists, dental hygienists, dental assistants, nuclear medicine technologists, occupational therapists, occupational therapy assistants, kinesiotherapists, orthotist-prosthetists, pharmacists, pharmacy technicians, physical therapy assistants, prosthetic representatives, psychologists, diagnostic radiologic technicians, therapeutic radiologic technicians, social workers, marriage and family therapists, licensed professional mental health counselors, blind rehabilitation specialists, blind rehabilitation outpatient specialists, and such other classes of health care occupations as the Secretary considers necessary for the recruitment and retention needs of the Department subject to the requirements in 38 U.S.C. 7401(3)(A).

- Other health-care personnel other than personnel in Senior Executive Service positions performing direct patient-care services or services incident to direct patient-care services who would be covered by chapter 51 of title 5, United States Code, were it not for the provisions of this agreement.

HHS Responsibilities:

If the Secretary or his/her designee deems it necessary to provide employees at any HHS health-care facility who are employed in the occupations covered under this provision with on-call pay, then he/she must authorize on-call pay in accordance with sections 7453(h) and 7457. HHS's official policies that describe eligibility for on-call pay must be applied consistently to the employees covered by this provision and follow merit system principles.

OPM Responsibilities:

A.    Periodically evaluate HHS's use of this provision for compliance with law.

B.    Ensure that the departments and agencies receiving this authority coordinate use of this provision and share information.

IV.    Authority to Establish Qualifications

HHS is delegated authority under chapters 33 and 51 of title 5, United States Code, to establish unique qualifications in lieu of qualifications established by OPM provided that the requirements of 38 U.S.C. 7402 are met.

<u>Citation:</u>

**38 U.S.C. 7402(a), (b), (d), and (f)**

**§ 7402.  Qualifications of appointees.**

**(a)** To be eligible for appointment to the positions in the Administration covered by subsection (b), a person must have the applicable qualifications set forth in that subsection.

**(b)(1)** Physician.--To be eligible to be appointed to a physician position, a person must—
**(A)** hold the degree of doctor of medicine or of doctor of osteopathy from a college or university approved by the Secretary,
**(B)** have completed an internship satisfactory to the Secretary, and
**(C)** be licensed to practice medicine, surgery, or osteopathy in a State.

**(2)** Dentist.--To be eligible to be appointed to a dentist position, a person must—
**(A)** hold the degree of doctor of dental surgery or dental medicine from a college or university approved by the Secretary, and
**(B)** be licensed to practice dentistry in a State.

**(3)** Nurse.--To be eligible to be appointed to a nurse position, a person must—
**(A)** have successfully completed a full course of nursing in a recognized school of nursing, approved by the Secretary, and
**(B)** be registered as a graduate nurse in a State.

**(4)** Director of a Hospital, Domiciliary, Center, or Outpatient Clinic.--To be eligible to be appointed to a director position, a person must have such business and administrative experience and qualifications as the Secretary shall prescribe.

**(5)** Podiatrist.--To be eligible to be appointed to a podiatrist position, a person must—
**(A)** hold the degree of doctor of podiatric medicine, or its equivalent, from a school of podiatric medicine approved by the Secretary, and
**(B)** be licensed to practice podiatry in a State.

**(6)** Optometrist.--To be eligible to be appointed to an optometrist position, a person must—
**(A)** hold the degree of doctor of optometry, or its equivalent, from a school of optometry approved by the Secretary, and
**(B)** be licensed to practice optometry in a State.
**(7)** Pharmacist.--To be eligible to be appointed to a pharmacist position, a person must—
**(A)** hold the degree of bachelor of science in pharmacy, or its equivalent, from a school of pharmacy, approved by the Secretary, and
**(B)** be registered as a pharmacist in a State.

**(8)** Psychologist.--To be eligible to be appointed to a psychologist position, a person must--
**(A)** hold a doctoral degree in psychology from a college or university approved by the Secretary,
**(B)** have completed study for such degree in a specialty area of psychology and an internship which are satisfactory to the Secretary, and
**(C)** be licensed or certified as a psychologist in a State, except that the Secretary may waive the requirement of licensure or certification for an individual psychologist for a period not to exceed two years on the condition that that psychologist provide patient care only under the direct supervision of a psychologist who is so licensed or certified.

**(9)** Social Worker.--To be eligible to be appointed to a social worker position, a person must--
**(A)** hold a master's degree in social work from a college or university approved by the Secretary; and
**(B)** be licensed or certified to independently practice social work in a State, except that the Secretary may waive the requirement of licensure or certification for an individual social worker for a reasonable period of time recommended by the Under Secretary of Health**.**

**(10)** Marriage and Family Therapist— To be eligible to be appointed to a marriage and family therapist position, a person must -
**(A)** hold a master's degree in marriage and family therapy, or a comparable degree in mental health, from a college or university approved by the Secretary; and
**(B)** be licensed or certified to independently practice marriage and family therapy in a State, except that the Secretary may waive the requirement of licensure or certification for an individual marriage and family therapist for a reasonable period of time recommended by the Under Secretary for Health.

**(11)** Licensed Professional Mental Health Counselor. - To be eligible to be appointed to a licensed professional mental health counselor position, a person must -
**(A)** hold a master's degree or doctoral degree in mental health counseling, or a related field, from a college or university approved by the Secretary; and
**(B)** be licensed or certified to independently practice mental health counseling.

**(12)** Chiropractor. - To be eligible to be appointed to a chiropractor position, a person must -
**(A)** hold the degree of doctor of chiropractic, or its equivalent, from a college of chiropractic approved by the Secretary; and
**(B)** be licensed to practice chiropractic in a State.

**(13)** Peer Specialist. - To be eligible to be appointed to a peer specialist position, a person must -
**(A)** be a veteran who has recovered or is recovering from a mental health condition; and
**(B)** be certified by -

**(i)** a not-for-profit entity engaged in peer specialist training as having met such criteria as the Secretary shall establish for a peer specialist position; or
**(ii)** a State as having satisfied relevant State requirements for a peer specialist position.

**(14)** Other Health-Care Positions.--To be appointed as a physician assistant, expanded-function dental auxiliary, certified or registered respiratory therapist, licensed physical therapist, licensed practical or vocational nurse, occupational therapist, dietitian, microbiologist, chemist, biostatistician, medical technologist, dental technologist, or other position, a person must have such medical, dental, scientific, or technical qualifications as the Secretary shall prescribe.

**(d)** A person may not be appointed under section 7401(1) of this title to serve in the Administration in any direct patient-care capacity unless the Under Secretary for Health determines that the person possesses such basic proficiency in spoken and written English as will permit such degree of communication with patients and other health-care personnel as will enable the person to carry out the person's health-care responsibilities satisfactorily.  Any determination by the Under Secretary for Health under this subsection shall be in accordance with regulations which the Secretary shall prescribe.

**(f)** A person may not be employed in a position under subsection (b) (other than under paragraph (4) of that subsection) if -
**(1)** the person is or has been licensed, registered, or certified (as applicable to such position) in more than one State; and
**(2)** either -
**(A)** any of those States has terminated such license, registration, or certification for cause; or
**(B)** the person has voluntarily relinquished such license, registration, or certification in any of those States after being notified in writing by that State of potential termination for cause.

Occupations Covered:

Individuals providing direct patient-care services or services incident to direct patient-care services (as prescribed by 5 U.S.C. 5371) employed as physicians, dentists, registered nurses (and nurse anesthetists), directors of a hospital, domiciliary, center, or outpatient clinic, podiatrists, optometrists, pharmacists, psychologists, social workers, marriage and family therapists, licensed professional mental health counselors, chiropractors, peer specialists, physician assistants, expanded-function dental auxiliaries, certified or registered respiratory therapists, licensed physical therapists, licensed practical or vocational nurses, occupational therapists, dietitians,  microbiologists, chemists, biostatisticians, medical technologist, dental technologist, or other position for which a person must have such medical, dental, scientific, or technical qualifications as prescribed by the Secretary.

<u>HHS Responsibilities:</u>

A.      HHS may use 38 U.S.C. 7402 only in conjunction with a qualification-based grading system as outlined in 38 U.S.C. 7403.

B.      Unique qualifications may be implemented for an occupation once the departments and agencies of the Interagency Committee for Health Care Occupations have reached consensus on a department's plan.

C.      HHS must provide OPM with information on HHS qualifications upon request.

<u>OPM Responsibilities:</u>

Periodically evaluate HHS's use of this provision for compliance with law.

V.      <u>Qualification-based Grading System</u>

<u>Citation:</u>

**38 U.S.C. 7403(a), (b)(4), (c), (e), and (f)(1)**

**§ 7403.  Period of appointments; promotions.**

**(a)(1)** Appointments under this chapter of health-care professionals to whom this section applies may be made only after qualifications have been satisfactorily established in accordance with regulations prescribed by the Secretary...
**(2)** This section applies to the following persons appointed under this chapter:
**(A)** Physicians. **(B)** Dentists.  **(C)** Podiatrists. **(D)** Optometrists. **(E)** Nurses.
**(F)** Physician assistants. **(G)** Expanded-function dental auxiliaries. **(H)** Chiropractors.

**(b)(4)** The record of each person serving under such an appointment in the Medical, Dental, and Nursing Services shall be reviewed from time to time by a board, appointed in accordance with regulations of the Secretary.

**(c)** Promotions of persons to whom this section applies shall be made only after examination given in accordance with regulations prescribed by the Secretary. Advancement within grade may be made in increments of the minimum rate of basic pay of the grade in accordance with regulations prescribed by the Secretary.

**(e)** In accordance with regulations prescribed by the Secretary, the grade and annual rate of basic pay of a person to whom this section applies whose level of assignment is changed from a level of assignment in which the grade level is based on both the nature of the assignment and personal qualifications may be adjusted to the grade and annual rate of basic pay otherwise appropriate.

**(f)(1)** Upon the recommendation of the Under Secretary for Health, the Secretary may--
**(A)** use the authority in subsection (a) to establish the qualifications for and (subject to paragraph (2)) to appoint individuals to positions listed in section 7401(3) of this title; and
**(B)** use the authority provided in subsection (c) for the promotion and advancement of Department employees serving in such positions.

Occupations Covered:

Individuals employed in the following positions performing direct patient care services and services incident to direct patient-care services (as prescribed by 5 U.S.C. 5371):

- Positions covered by 38 U.S.C. 7401(3)—audiologists, speech pathologists, audiologist-speech pathologists, biomedical engineers, certified or registered respiratory therapists, dietitians, licensed physical therapists, licensed practical or vocational nurses, nurse assistants, medical instrument technicians, medical records administrators or specialists, medical records technicians, medical technologists, dental hygienists, dental assistants, nuclear medicine technologists, occupational therapists, occupational therapy assistants, kinesiotherapists, orthotist-prosthetists, pharmacists, pharmacy technicians, physical therapy assistants, prosthetic representatives, psychologists, diagnostic radiologic technicians, therapeutic radiologic technicians, social workers, marriage and family therapists, licensed professional mental health counselors, blind rehabilitation specialists, blind rehabilitation outpatient specialists, and such other classes of health care occupations as the Secretary considers necessary for the recruitment and retention needs of the Department subject to the requirements in 38 U.S.C. 7401(3)(A).

- Other health-care personnel other than personnel in Senior Executive Service positions performing direct patient-care services or services incident to direct patient-care services who would be covered by chapter 51 of title 5, United States Code, were it not for the provisions of this agreement.

HHS Responsibilities:

A.   Qualification-based grading system, as under the delegated provision in 38 U.S.C. 7403, may be implemented for an occupation once the departments and agencies on the Interagency Committee for Health Care Occupations reach consensus on a department's plan.

B.   Provide OPM with information on HHS's qualification-based grading system upon request.

OPM Responsibilities:

Periodically evaluate HHS's use of this provision for compliance with law.

VI.    Head Nurse Pay and Nurse Executive Special Pay

Citation:

**38 U.S.C. 7452(a)(2) and (g)**

**§ 7452.  Nurses and other health-care personnel: administration of pay.**

 **(a)(2)** A nurse serving in a head nurse position shall while so serving receive basic pay at a rate two step increments above the rate that would otherwise be applicable to the nurse. If such a nurse is in the highest or next-to-highest step for that nurse's grade, the preceding sentence shall be applied by extrapolation to create additional steps only for the purposes of this paragraph.  The limitation in section 7451(c)(1) of this title shall not apply with respect to increased basic pay under this paragraph.

**(g) ( 1)** In order to recruit and retain highly qualified Department nurse executives, the Secretary may, in accordance with regulations prescribed by the Secretary, pay special pay to the nurse executive at each location as follows:
   (A) Each Department health care facility.
   (B) The Central Office.
**(2)** The amount of special pay paid to a nurse executive under paragraph (1) shall be not less than $10,000 or more than $100,000.
**(3)** The amount of special pay paid to a nurse executive under paragraph (1) shall be based on factors such as the grade of the nurse executive position, the scope and complexity of the nurse executive position, the personal qualifications of the nurse executive, the characteristics of the health care facility concerned, the nature and number of specialty care units at the health care facility concerned, demonstrated difficulties in recruitment and retention of nurse executives at the health care facility concerned, and such other factors as the Secretary considers appropriate.
**(4)** Special pay paid to a nurse executive under paragraph (1) shall be in addition to any other pay (including basic pay) and allowances to which the nurse executive is entitled, and shall be considered pay for all purposes, including retirement benefits under chapters 83 and 84 of title 5, and other benefits, but shall not be considered basic pay for purposes of adverse actions under subchapter V of this chapter.

Occupations Covered:

Head Nurse Pay:  Individuals performing direct patient-care services or services incident to direct patient-care services (as prescribed by 5 U.S.C. 5371) employed as civilian registered nurses and nurse anesthetists.

Nurse Executive Special Pay:  Individuals performing direct patient-care services or services incident to direct patient-care services (as prescribed by 5 U.S.C. 5371) employed as civilian nurse executives, i.e., a registered nurse who is the highest ranking

official responsible for nursing programs at a health care facility. Nurse executive pay may not be paid to a member of the Senior Executive Service.

HHS Responsibilities:

A. If the Secretary or his/her designee deems it necessary to provide nurses who are serving in head nurse positions with basic pay at a rate two step increments above the rate that would otherwise be applicable to them, then he/she must authorize head nurse pay in accordance with section 7452(a)(2). However, this provision is not applicable for nurses whose grade and pay level is based on their supervisory duties. HHS official policies that describe eligibility for head nurse pay must be applied consistently to the civilian registered nurses and nurse anesthetists covered by this provision and follow merit system principles.

B. If the Secretary or his/her designee deems it necessary to provide nurses who are serving in nurse executive positions with special pay, then he/she must authorize special pay in accordance with section 7452(g). HHS official policies that describe eligibility for nurse executive pay must be applied consistently to the civilian nurse executives covered by this provision and follow merit system principles.

OPM Responsibilities:

Periodically evaluate HHS's use of these provisions for compliance with law and the delegation agreement.


VII. Hours of Employment

Citation:

**38 U.S.C. 7421(a)**

**§ 7421. Personnel administration: in general.**

**(a)** Notwithstanding any law, Executive order, or regulation, the Secretary shall prescribe by regulation the hours and conditions of employment...[for individuals employed] in positions...[receiving pay under 38 U.S.C. 7431 through 7433].

Occupations Covered:

Individuals performing direct patient-care services or services incident to direct patient-care services (as prescribed by 5 U.S.C. 5371) receiving pay for physicians, podiatrists, and dentists under the Physicians, Podiatrists, and Dentists Pay System (38 U.S.C. 7431 through 7433).

Citation:

**38 U.S.C. 7423(a)**

**§ 7423.  Personnel administration:  full-time employees**

**(a)(1)** Except as provided in paragraph (2), the hours of employment in carrying out responsibilities under this title of any employee who is appointed in the Administration under any provision of this chapter on a full-time basis in a position listed in section 7421(b) of this title (other than an intern or resident appointed pursuant to section 7406 of this title) and who accepts responsibilities for carrying out professional services for remuneration other than those assigned under this title shall consist of not less than 80 hours in a biweekly pay period (as that term is used in section 5504 of title 5).

**(2) (A)** Upon the advance written request of a covered physician, the Secretary may modify the hours of employment for a physician appointed in the Administration under any provision of this chapter on a full-time basis to be more or less than 80 hours in a biweekly pay period, subject to the requirements in subparagraph (B). For the purpose of determining pay, such a physician shall be deemed to have a biweekly schedule of 80 hours of employment.

**(B)** A physician with an irregular work schedule established under subparagraph (A) shall be obligated to account for at least 2,080 hours of employment (through performance of work or use of leave or paid time off) in a calendar year.

**(C)** The Secretary may prescribe regulations to implement this paragraph, including regulations making adjustments to address the annual hours requirement for physicians who are covered by this paragraph for only a portion of a calendar year.

Occupations Covered:

Physicians performing direct patient-care services or services incident to direct patient-care services (as prescribed by 5 U.S.C. 5371) receiving pay under the Physicians, Podiatrists, and Dentists Pay System (38 U.S.C. 7431 through 7433).

HHS Responsibilities:

This section may be used pending implementation by VA and issuance of its policy. Agency policy must be consistent with that of VA.  In order to deviate from VA policy, consensus must be obtained from the Interagency Committee for Health Care Occupations.

OPM Responsibilities:

Periodically evaluate HHS use of this provision for compliance with law.

VIII.  Pay for Physicians, Podiatrists, and Dentists

Citation:

**38 U.S.C. 7431(a), (b), (c), (d), (e), (f), and (h)**

**§ 7431.  Pay.**

**(a)** ELEMENTS OF PAY- Pay of physicians, podiatrists, and dentists in the Veterans Health Administration shall consist of three elements as follows:
**(1)** Base pay as provided for under subsection (b).
**(2)** Market pay as provided for under subsection (c).
**(3)** Performance pay as provided under subsection (d).

**(b)** BASE PAY- One element of pay for physicians, podiatrists, and dentists shall be base pay.  Base pay shall meet the following requirements:
**(1)** Each physician, podiatrist, and dentist is entitled to base pay determined under the Physician, Podiatrist, and Dentist Base and Longevity Pay Schedule.
**(2)** The Physician, Podiatrist, and Dentist Base and Longevity Pay Schedule is composed of 15 rates of base pay designated, from the lowest rate of pay to the highest rate of pay, as base pay steps 1 through 15.
**(3)** The rate of base pay payable to a physician, podiatrist, or dentist is based on the total number of the years of the service of the physician, podiatrist, or dentist in the Veterans Health Administration as follows:

| For a physician, podiatrist, or dentist with total service of: | The rate of base pay is the rate payable for: |
|---|---|
| two years or less | step 1 |
| more than 2 years and not more than 4 years | step 2 |
| more than 4 years and not more than 6 years | step 3 |
| more than 6 years and not more than 8 years | step 4 |
| more than 8 years and not more than 10 years | step 5 |
| more than 10 years and not more than 12 years | step 6 |
| more than 12 years and not more than 14 years | step 7 |
| more than 14 years and not more than 16 years | step 8 |
| more than 16 years and not more than 18 years | step 9 |
| more than 18 years and not more than 20 years | step 10 |
| more than 20 years and not more than 22 years | step 11 |
| more than 22 years and not more than 24 years | step 12 |

more than 24 years and not more than 26 years      step 13
more than 26 years and not more than 28 years      step 14
more than 28 years      step 15.

**(4)** At the same time as rates of basic pay are increased for a year under section 5303 of title 5, the Secretary shall increase the amount of base pay payable under this subsection for that year by a percentage equal to the percentage by which rates of basic pay are increased under such section for that year.

**(5)** The non-foreign cost of living adjustment allowance authorized under section 5941 of title 5 for physicians, podiatrists, and dentists whose pay is set under this section shall be determined
as a percentage of base pay only.

**(c) MARKET PAY-** One element of pay for physicians, podiatrists, and dentists shall be market pay. Market pay shall meet the following requirements:

**(1)** Each physician, podiatrist, and dentist is eligible for market pay.

**(2)** Market pay shall consist of pay intended to reflect the recruitment and retention needs for the specialty or assignment (as defined by the Secretary) of a particular physician, podiatrist, or dentist in a facility of the Department of Veterans Affairs.

**(3)** The annual amount of the market pay payable to a physician, podiatrist, or dentist shall be determined by the Secretary on a case-by-case basis.

**(4)** The determination of the amount of market pay of a physician, podiatrist, or dentist shall take into account--

**(A)** the level of experience of the physician, podiatrist, or dentist in the specialty or assignment of the physician, podiatrist, or dentist;

**(B)** the need for the specialty or assignment of the physician, podiatrist, or dentist at the medical facility of the Department concerned;

**(C)** the health care labor market for the specialty or assignment of the physician, podiatrist, or dentist, which may cover any geographic area the Secretary considers appropriate for the specialty or assignment;

**(D)** the board certifications, if any, of the physician, podiatrist, or dentist;

**(E)** the prior experience, if any, of the physician, podiatrist, or dentist as an employee of the Veterans Health Administration; and

**(F)** such other considerations as the Secretary considers appropriate.

**(5)** The amount of market pay of a physician, podiatrist, or dentist shall be evaluated by the Secretary not less often than once every 24 months.  The amount of market pay may be adjusted as the result of an evaluation under this paragraph.  A physician, podiatrist, or dentist whose market pay is evaluated under this paragraph shall receive written notice of the results of such evaluation in accordance with procedures prescribed under section 7433 of this title.

**(6)** No adjustment of the amount of market pay of a physician, podiatrist, or dentist under paragraph (5) may result in a reduction of the amount of market pay of the physician, podiatrist, or dentist while in the same position or assignment at the medical facility of the Department concerned, unless there is a change in board certification or reduction of privileges.

**(d)** PERFORMANCE PAY-
**(1)** One element of pay for physicians, podiatrists, and dentists shall be performance pay.
**(2)** Performance pay shall be paid to a physician, podiatrist, or dentist on the basis of the physician's or dentist's achievement of specific goals and performance objectives prescribed by the Secretary.
**(3)** The Secretary shall ensure that each physician, podiatrist, and dentist of the Department is advised of the specific goals or objectives that are to be measured by the Secretary in determining the eligibility of that physician, podiatrist, or dentist for performance pay.
**(4)** The amount of the performance pay payable to a physician, podiatrist, or dentist may vary annually on the basis of individual achievement or attainment of the goals or objectives applicable to the physician, podiatrist, or dentist under paragraph (2).
**(5)** The amount of performance pay payable to a physician, podiatrist, or dentist in a fiscal year shall be determined in accordance with regulations prescribed by the Secretary, but may not exceed the lower of--
**(A)** $15,000; or
**(B)** the amount equal to 7.5 percent of the sum of the base pay and the market pay payable to such physician, podiatrist, or dentist in that fiscal year.

**(e)** REQUIREMENTS AND LIMITATIONS ON TOTAL PAY-
**(1)(A)** Not less often than once every two years, the Secretary shall prescribe for Department-wide applicability the minimum and maximum amounts of annual pay that may be paid under this section to physicians and the minimum and maximum amounts of annual pay that may be paid under this section to podiatrists and dentists.
**(B)** The Secretary may prescribe for Department-wide applicability under this paragraph separate minimum and maximum amounts of pay for a specialty or assignment. If the Secretary prescribes separate minimum and maximum amounts for a specialty or assignment, the Secretary may establish up to four tiers of minimum and maximum amounts for such specialty or assignment and prescribe for each tier a minimum amount and a maximum amount that the Secretary determines appropriate for the professional responsibilities, professional achievements, and administrative duties of the physicians, podiatrists, or dentists (as the case may be) whose pay is set within that tier.
**(C)** Amounts prescribed under this paragraph shall be published in the Federal Register, and shall not take effect until at least 60 days after the date of publication.
 **(2)** Except as provided in paragraph (3) and subject to paragraph (4), the sum of the total amount of the annual rate of base pay payable to a physician, podiatrist, or dentist under subsection (b) and the market pay determined for the physician, podiatrist, or dentist under subsection (c) may not be less than the minimum amount, nor more than the maximum amount, applicable to specialty or assignment of the physician, podiatrist, or dentist under paragraph (1).
**(3)** The sum of the total amount of the annual rate of base pay payable to a physician, podiatrist, or dentist under subsection (b) and the market pay determined for the physician, podiatrist, or dentist under subsection (c) may exceed the maximum amount applicable to the specialty or assignment of the physician, podiatrist, or dentist under paragraph (1) as a result of an adjustment under paragraph (3) or (4) of subsection (b).

**(4)** In no case may the total amount of compensation paid to a physician, podiatrist, or dentist under this title in any year exceed the amount of annual compensation (excluding expenses) specified in section 102 of title 3.

**(f)** TREATMENT OF PAY- Pay under subsections (b) and (c) of this section shall be considered pay for all purposes, including retirement benefits under chapters 83 and 84 of title 5 and other benefits.

**(h)** DELEGATION OF RESPONSIBILITIES- The Secretary may delegate to an appropriate officer or employee of the Department any responsibility of the Secretary under subsection (c), (d), or (e) except for the responsibilities of the Secretary under subsection (e)(1).

Citation:

**38 U.S.C. 7432**

**§ 7432. Pay of Under Secretary for Health.**

**(a)** BASE PAY- The base pay of the Under Secretary for Health shall be the annual rate of basic pay for positions at Level III of the Executive Schedule under section 5314 of title 5.

**(b)** MARKET PAY-
**(1)** In the case of an Under Secretary for Health who is also a physician or dentist, in addition to the base pay specified in subsection (a) the Under Secretary for Health may also be paid the market pay element of pay of physicians and dentists under section 7431(c) of this title.
**(2)** The amount of market pay of the Under Secretary for Health under this subsection shall be established by the Secretary.
**(3)** In establishing the amount of market pay of the Under Secretary for Health under this subsection, the Secretary shall utilize an appropriate health care labor market selected by the Secretary for purposes of this subsection.

**(c)** TREATMENT OF PAY- Pay under this section shall be considered pay for all purposes, including retirement benefits under chapters 83 and 84 of title 5 and other benefits.

Citation:

**38 U.S.C. 7433(a)**

**§ 7433. Administrative matters.**

(a) REGULATIONS-

The Secretary shall prescribe regulations relating to the pay of physicians, podiatrists, and dentists in the Veterans Health Administration under this subchapter.
(b) RECOMMENDATIONS AND VIEWS-
In prescribing the regulations, the Secretary shall take into account the recommendations of the Under Secretary for Health on the administration of this subchapter. In formulating recommendations for the purpose of this subsection, the Under Secretary shall request the views of representatives of labor organizations that are exclusive representatives of physicians, podiatrists, and dentists of the Department and the views of representatives of professional organizations of physicians, podiatrists, and dentists of the Department.

Occupations Covered:

Individuals performing direct patient-care services or services incident to direct-care services (as prescribed by 5 U.S.C. 5371) employed as physicians, podiatrists, and dentists.

HHS Responsibilities:

A.     Pay for full-time physicians, podiatrists, and dentists, as under the delegated provisions of 38 U.S.C. 7431 through 7433, may be implemented for an occupation once the departments and agencies on the Interagency Committee for Health Care Occupations reach consensus on a department's plan.

B.     If desired, in determining the amount of the market pay for a particular physician, podiatrist, or dentist under this subsection, and in determining a tier (if any) to apply to a physician, podiatrist, or dentist under subsection (e)(1)(B), the Secretary may consult with and consider the recommendations of an appropriate panel or board composed of supervisors/managers.

C.     Pay under any provision of sections 7431 through 7433 may not be paid in conjunction with any premium pay (including compensatory time off in lieu of overtime pay and compensatory time off for travel) under chapter 55 of title 5, United States Code.

D.     If the Secretary or his/her designee deems it necessary to provide pay under the physician, podiatrist, and dentist pay system for certain categories of physicians, podiatrists, or dentists, the Secretary or his/her designee must pay the individual physician, podiatrist, or dentist according to the conditions specified in the delegated provisions of sections 7431 through 7433 being used.  HHS must determine individual salaries for physicians, podiatrists, and dentists using the nationwide pay ranges and specialties published in the Federal Register by the Department of Veterans Affairs (VA) under the authority of  38 U.S.C. 7431(e). If HHS has a physician, podiatrist, or dentist specialty not covered by one of the pay ranges established by VA, HHS may (1) cover that specialty under an existing VA pay range or (2) establish a new pay range, consistent with the requirements

for establishing pay ranges under 38 U.S.C. 7431.  HHS will notify OPM and the Interagency Committee for Healthcare Occupations if it adds a new specialty to an existing VA pay range or establishes a new pay range and issue a Federal Register notice as required by 38 U.S.C. 7431(e)(1)(C).  HHS may not pay physicians the physicians' comparability allowance under 5 U.S.C. 5948 and pay for physicians under the physicians, podiatrists, and dentists pay system simultaneously.

E.     HHS may apply one or more of the pay provisions in 38 U.S.C. 7431 – 7433 selectively at a given time.  HHS may continue to provide base pay to the Department's physicians, podiatrists, and dentists under the General Schedule (GS) pay system instead of implementing the base pay provisions in 38 U.S.C. 7431(b).  HHS may pay market pay and performance pay under 38 U.S.C. 7431(c) and (d) in addition to the GS base rates.  HHS physicians, podiatrists, and dentists who receive market pay under 38 U.S.C. 7431(c) are no longer entitled to receive any locality payments under 5 U.S.C. 5304 or special rate supplements under 5 U.S.C. 5305 or 38 U.S.C. 7455.

F.     In determining the amount of a physician's, podiatrist's, or dentist's market pay upon initial conversion to the title 38 physician, podiatrist, and dentist pay system, HHS must take into account any loss of pay resulting from the payment of title 38 market pay instead of the former title 5 physicians' comparability allowance and title 5 locality payments or title 5 or title 38 special rate supplements so that an employee does not lose pay upon conversion.  The annual amount of a physician's, podiatrist's or dentist's,  GS base pay plus market pay may not be less than the minimum rate nor more than the maximum rate of the applicable annual pay range established by the Department of Veterans Affairs unless an above-range rate of pay is necessary to avoid a reduction in pay upon conversion.

G.     Market pay may not be reduced unless there is a change in the employee's assignment, including a change in duty station, change in facility, reassignment to a different position in the same facility, or a change in the employee's work schedule, e.g., change from full-time to part-time; a change in board certification; or a reduction in privileges.

H.     If HHS implements the performance pay provisions in 38 U.S.C. 7431(d), the delegated performance pay authority may be used in lieu of, or in addition to, the rating-based award authority and any goalsharing program the Department might otherwise have established under chapter 45 of title 5, United States Code.

I.     Foreign area cost-of-living allowances and post differentials authorized under 5 U.S.C. 5924 and 5925, respectively; and danger pay allowances authorized under 5 U.S.C. 5928; must be computed as a percentage of a physician's, podiatrist's or dentist's GS base pay plus market pay.

J.     HHS physicians, podiatrists, and dentists, who receive base pay under 38 U.S.C.

7431(b) and/or market pay under 38 U.S.C. 7431(c) may not receive grade or pay retention under 5 U.S.C. chapter 53, subchapter VI. The title 38 physician, podiatrist, and dentist base pay and/or market pay authority must apply in lieu of the title 5 grade and pay retention authority.

K.    A HHS physician, podiatrist, or dentist, may receive a rate of pay under the title 38 physician, podiatrist, and dentist pay system that is above the applicable market pay range only upon—

1. Conversion to title 38 market pay when the physician's, podiatrist's, or dentist's GS base rate, plus former locality rate or special rate and former title 5 physicians' comparability allowance, exceeds the maximum rate of his or her market pay range;

2. Receipt of a GS base pay increase under 5 U.S.C. 5303, promotion increase under 5 U.S.C. 5334(b), within-grade increase under 5 U.S.C. 5335, or quality-step increase under 5 U.S.C. 5336, when the physician's, podiatrist's, or dentist's new GS base rate, plus title 38 market pay, exceeds the maximum rate of his or her market pay range because of such an increase;

3. Approval of an exception to a market pay range for an individual or group in order to recruit or retain well-qualified physicians, podiatrists, or dentists;

4. Termination of an exception to a market pay range for a group of physicians, podiatrists, or dentists (e.g., when such an exception was approved to recruit or retain physicians, podiatrists, or dentists at a particular facility or location) when the employee's market rate exceeds the maximum rate of his or her market pay range and the agency is prohibited from reducing the employee's market rate because the employee did not change assignments simultaneously with the termination of the exception; or

5. Movement from a Senior Executive Service (SES) position to a physician, podiatrist, or dentist position covered by title 38 market pay when the physician, podiatrist, or dentist would otherwise be eligible for saved pay, under 5 U.S.C. 3594 and the physician's, podiatrist's, or dentist's former SES rate (or career appointee's rate in the civil service position immediately before appointment in the SES, if higher) exceeds the maximum rate of the applicable market pay range. The initial market rate must be set at a rate equal to the rate to which the physician, podiatrist, or dentist would have been entitled under 5 U.S.C. 3594. Since the physician, podiatrist, or dentist is entitled to an above-range rate under the title 38 market pay system that equals the saved rate entitlement under 5 U.S.C. 3594, the provisions of section 3594 do not apply. (See 5 U.S.C. 3594(c)(1)(B)(i).) Such employees must have their base rate set at step 10 of the applicable grade upon movement from the SES position to a physician, podiatrist, or dentist position.

L.   A HHS physician, podiatrist, or dentist receiving a rate of pay under the title 38 physician, podiatrist, and dentist pay system that is above the applicable market pay range may receive—
     1.   Base pay increases when GS rates are increased under 5 U.S.C. 5303 (i.e., the full GS statutory increase, not 50 percent),
     2.   Promotion increases under 5 U.S.C. 5334(b) when promoted to a higher grade,
     3.   Within-grade increases under 5 U.S.C. 5335,
     4.   Quality-step increases under 5 U.S.C. 5336, and
     5.   Market pay increases upon approval of an exception to a market pay range to address recruitment or retention needs.  If the physician, podiatrist, or dentist is already receiving a rate above the market pay range under an approved exception, a new exception must be approved.
     HHS may not reduce the physician's, podiatrist's, or dentist's market pay to offset increases in base pay.  HHS physicians, podiatrists, or dentists are not eligible for within-grade increases or quality step increases if their base pay is at the maximum of the GS rate range.

M.   If a HHS physician, podiatrist, or dentist with a rate of pay above the market pay range has a change in assignment (e.g., change of position, organization, duties, or location), the physician's, podiatrist's, or dentist's, initial rate of pay on the effective date of the change in assignment may be set above the newly applicable market pay range only under the conditions described in the preceding paragraph (i.e., because of a simultaneous base pay increase or the approval of an exception to address recruitment or retention needs).  If an above-range market rate is set to address recruitment or retention needs, the market rate may be higher or lower than the former rate, as HHS determines to be appropriate.  If HHS does not approve an exception, the employee's market pay must be reduced to a rate within the newly applicable market pay range.

N.   Unless an exception to the market pay range is approved to address recruitment or retention needs, a HHS physician, podiatrist, or dentist is not entitled to a rate of pay above the applicable market pay range because of—
     1.   A reduction in grade because of a reduction-in-force or reclassification action, or
     2.   A reduction in pay because of placement in a lower market pay schedule or market pay tier.

O.   Upon movement from a physician, podiatrist, or dentist title 38 market pay position to a lower-graded GS position not covered by market pay, an employee is not entitled to grade retention under 5 U.S.C. 5362.  (Grade retention does not apply to an employee moving from a pay system not covered by the grade retention authority to a position covered by the grade retention authority.  See exclusion in 5 CFR 536.102(c).)

34

P.    Upon movement by management action (as defined in 5 CFR 536.103) from a physician, podiatrist, or dentist title 38 market pay position to a lower-graded GS position not covered by market pay, HHS may apply *optional* pay retention under 5 U.S.C. 5363 if the employee's rate of basic pay would otherwise be reduced by such action.  (Optional pay retention may apply when an employee moves from a pay system not covered by the pay retention authority to a position covered by the pay retention authority.  See 5 CFR 536.302.)

Q.    In applying the pay retention provisions at 5 CFR 536.304—
1.    If the employee's market pay rate is less than or equal to the highest applicable rate range for the grade of the employee's new GS position (e.g., a locality or special rate range), the employee is entitled to the lowest rate of basic pay in such rate range that equals or exceeds the employee's market pay rate.
2.    If the employee's market pay rate is greater than the maximum rate of the highest applicable rate range for the grade of the employee's new GS position, the employee is entitled to a retained rate equal to the market rate, not to exceed the *lower* of 150 percent of the maximum payable rate of basic pay for the highest applicable rate range or the rate for EX-IV.

R.    HHS must coordinate with other departments using the pay provisions for physicians, podiatrists, and dentists, and share information accordingly.

S.    In no case may the total amount of compensation paid to a physician, podiatrist, or dentist in any year exceed the amount of annual compensation (excluding expenses) of the President of the United States (3 U.S.C. 102).  In the event that the amount of compensation does exceed this amount, there will be no deferral of compensation.


OPM Responsibilities:

A.    Periodically evaluate HHS use of these provisions for compliance with law.

B.    Ensure that the departments and agencies coordinate use of these provisions and share information.


IX.    Nurse Locality Pay System

Citation:

**38 U.S.C. 7451 (a), (b), (c), (d), (e), and (g)**

**§ 7451.  Nurses and other health-care personnel: competitive pay.**

**(a)(1)** It is the purpose of this section to ensure, by a means providing increased responsibility and authority to directors of Department health-care facilities, that the rates of basic pay for health-care personnel positions described in paragraph (2) in each Department health-care facility (including the rates of basic pay of personnel employed in such positions on a part-time basis) are sufficient for that facility to be competitive, on the basis of pay and other employee benefits, with non-Department health-care facilities in the same labor-market area in the recruitment and retention of qualified personnel for those positions.

**(2)** The health-care personnel positions referred to in paragraph (1) (hereinafter in this section referred to as "covered positions") are the following:

**(A)** Registered nurse.

**(B)** Physician assistant.

**(C)** Such positions referred to in paragraphs (1) and (3) of section 7401 of this title (other than the positions of physician, dentist, registered nurse, and physician assistant) as the Secretary may determine upon the recommendation of the Under Secretary for Health.

**(3)** (A) Except as provided in subparagraph (B), the rates of basic pay for covered positions in the Department shall be established and adjusted in accordance with this section instead of subsection (b)(1) of section 7404 of this title or chapter 53 of title 5.

**(4)** The Secretary, after receiving the recommendation of the Under Secretary for Health, shall prescribe regulations setting forth criteria and procedures to carry out this section and section 7452 of this title. Requirements in such regulations for directors to provide and maintain documentation of actions taken under this section shall require no more documentation than the minimum essential for responsible administration.

**(b)** The Secretary shall maintain the five grade levels for nurses employed by the Department under section 7401(1) of this title as specified in the Nurse Schedule in section 7404(b) of this title. The Secretary shall, pursuant to regulations prescribed to carry out this subchapter, establish grades for other covered positions as the Secretary considers appropriate.

**(c)(1)** For each grade in a covered position, there shall be a range of basic pay. The maximum rate of basic pay for a grade shall be 133 percent of the minimum rate of basic pay for the grade, except that, if the Secretary determines that a higher maximum rate is necessary with respect to any grade in order to recruit and retain a sufficient number of high-quality health-care personnel, the Secretary may raise the maximum rate of basic pay for that grade to a rate not in excess of 175 percent of the minimum rate of basic pay for the grade. Whenever the Secretary exercises the authority under the preceding sentence to establish the maximum rate of basic pay at a rate in excess of 133 percent of the minimum rate for that grade, the Secretary shall, in the next annual report required by subsection (g), provide justification for doing so to the Committees on Veterans' Affairs of the Senate and House of Representatives.

**(2)** The maximum rate of basic pay for any grade for a covered position may not exceed the maximum rate of basic pay established for positions in level IV of the Executive Schedule under section 5316 of title 5. The maximum rate of basic pay for a grade for the position of certified registered nurse anesthetist pursuant to an adjustment under

subsection (d) may exceed the maximum rate otherwise provided in the preceding sentence.

**(3)**  The range of basic pay for each such grade shall be divided into equal increments, known as "steps."  The Secretary shall prescribe the number of steps.  Each grade in a covered position shall have the same number of steps.  Rates of pay within a grade may not be established at rates other than whole steps.  Any increase (other than an adjustment under subsection (d)) within a grade in the rate of basic pay payable to an employee in a covered position shall be by one or more of such step increments.

**(d)(1)**  Subject to subsection (e), the rates of basic pay for each grade in a covered position shall be adjusted periodically in accordance with this subsection in order to achieve the purposes of this section.  Such adjustments shall be made—

**(A)** whenever there is an adjustment under section 5303 of title 5 in the rates of pay under the General Schedule, with the adjustment under this subsection to have the same effective date and to be by the same percentage as the adjustment in the rates of basic pay under the General Schedule; and

**(B)** at such additional times as the director of a Department health-care facility, with respect to employees in that grade at that facility, or the Under Secretary for Health, with respect to covered Regional and Central Office employees in that grade, determines.

**(2)**  An adjustment in rates of basic pay under this subsection for a grade shall be carried out by adjusting the amount of the minimum rate of basic pay for that grade in accordance with paragraph (3) and then adjusting the other rates for that grade to conform to the requirements of subsection (c).  Except as provided in paragraph (1)(A), such an adjustment in the minimum rate of basic pay for a grade shall be made by the director of a Department health-care facility so as to achieve consistency with the beginning rate of compensation for corresponding health-care professionals in the Bureau of Labor Statistics (BLS) labor-market area of that facility.

**(3)(A)**  In the case of a Department health-care facility located in an area for which there is current information, based upon an industry-wage survey by the Bureau of Labor Statistics for that labor market, on beginning rates of compensation for corresponding health-care professionals for the BLS labor-market area of that facility, the director of the facility concerned shall use that information as the basis for making adjustments in rates of pay under this subsection.  Whenever the Bureau of Labor Statistics releases the results of a new industry-wage survey for that labor market that includes information on beginning rates of compensation for corresponding health-care professionals, the director of that facility shall determine, not later than 30 days after the results of the survey are released, whether an adjustment in rates of pay for employees at that facility for any covered position is necessary in order to meet the purposes of this section.  If the director determines that such an adjustment is necessary, the adjustment, based upon the information determined in the survey, shall take effect on the first day of the first pay period beginning after that determination.

**(B)**  In the case of a Department health-care facility located in an area for which the Bureau of Labor Statistics does not have current information on beginning rates of compensation for corresponding health-care professionals for the labor-market area of that facility for any covered position, the director of that facility shall conduct a survey in accordance with this subparagraph and shall adjust the amount of the minimum rate of

basic pay for grades in that covered position at that facility based upon that survey.  To the extent practicable, the director shall use third-party industry wage surveys to meet the requirements of the preceding sentence.  Any such survey shall be conducted in accordance with regulations prescribed by the Secretary.  Those regulations shall be developed in consultation with the Secretary of Labor in order to ensure that the director of a facility collects information that is valid and reliable and is consistent with standards of the Bureau.  The survey should be conducted using methodology comparable to that used by the Bureau in making industry-wide surveys except to the extent determined infeasible by the Secretary.  To the extent practicable, all surveys conducted pursuant to this subparagraph or subparagraph (A) shall include the collection of salary midpoints, actual salaries, lowest and highest salaries, average salaries, bonuses, incentive pays, differential pays, actual beginning rates of pay, and such other information needed to meet the purpose of this section.  Upon conducting a survey under this subparagraph, the director concerned shall determine, not later than 30 days after the date on which the collection of information through the survey is completed or published, whether an adjustment in rates of pay for employees at that facility for any covered position is necessary in order to meet the purposes of this section.  If the director determines that such an adjustment is necessary, the adjustment, based upon the information determined in the survey, shall take effect on the first day of the first pay period beginning after that determination.

**(C)(i)** A director of a Department health-care facility may use data on the compensation paid to certified registered nurse anesthetists who are employed on a salary basis by entities that provide anesthesia services through certified registered nurse anesthetists in the labor-market area only if the director –

**(I)** has conducted a survey of compensation for certified registered nurse anesthetists in the local labor-market area of the facility under subparagraph (B);

**(II)** has used all available administrative authority with regard to collection of survey data; and

**(III)** makes a determination (under regulations prescribed by the Secretary) that such survey methods are insufficient to permit the adjustments referred to in subparagraph (B) for such nurse anesthetists employed by the facility.

**(ii)**  For purposes of this subparagraph, certified registered nurse anesthetists who are so employed by such entities shall be deemed to be corresponding health-care professionals to the certified registered nurse anesthetists employed by the facility.

**(D)** The Under Secretary for Health shall prescribe regulations providing for the adjustment of the rates of basic pay for Regional and Central Office employees in covered positions in order to assure that those rates are sufficient and competitive.

**(E)** The director of a facility or Under Secretary for Health may not adjust rates of basic pay under this subsection for any pay grade so that the minimum rate of basic pay for that grade is greater than the beginning rates of compensation for corresponding positions at non-Department health-care facilities.

**(F)** The Under Secretary for Health shall provide appropriate education, training, and support to directors of Department health care facilities in the conduct and use of surveys, including the use of third-party surveys, under this paragraph.

**(4)** If the director of a Department health-care facility, or the Under Secretary for Health with respect to Regional and Central Office employees, determines, after any survey

under paragraph (3)(B) or at any other time that an adjustment in rates of pay is scheduled to take place under this subsection, that it is not necessary to adjust the rates of basic pay for employees in a grade of a covered position at that facility in order to carry out the purpose of this section, such an adjustment for employees at that facility in that grade shall not be made.  Whenever a director makes such a determination, the director shall within 10 days notify the Under Secretary for Health of the decision and the reasons for the decision.

**(5)** Information collected by the Department in surveys conducted under this subsection is not subject to disclosure under section 552 of title 5.

**(6)** In this subsection—

**(A)** The term "beginning rate of compensation", with respect to health-care personnel positions in non-Department health-care facilities corresponding to a grade of a covered position, means the sum of—

**(i)** the minimum rate of pay established for personnel in such positions who have education, training, and experience equivalent or similar to the education, training, and experience required for health-care personnel employed in the same category of Department covered positions; and

**(ii)** other employee benefits for those positions to the extent that those benefits are reasonably quantifiable.

**(B)** The term "corresponding", with respect to health-care personnel positions in non-Department health-care facilities, means those positions for which the education, training, and experience requirements are equivalent or similar to the education, training, and experience requirements for health-care personnel positions in Department health-care facilities.

**(e)(1)**  An adjustment in a rate of basic pay under subsection (d) may not reduce the rate of basic pay applicable to any grade of a covered position.

**(2)**  The director of a Department health-care facility, in determining whether to carry out a wage survey under subsection (d)(3) with respect to rates of basic pay for a grade of covered position, may not consider as a factor in such determination the absence of a current recruitment or retention problem for personnel in that grade of that position.  The director shall make such a determination based upon whether, in accordance with criteria established by the Secretary, there is a significant pay-related staffing problem at that facility in any grade for a position.  If the director determines that there is such a problem, or that such a problem is likely to exist in the near future, the Director shall provide for a wage survey in accordance with subsection (d)(3).

**(3)**  The Under Secretary for Health may, to the extent necessary to carry out the purposes of subsection (d), modify any determination made by the director of a Department health-care facility with respect to adjusting the rates of basic pay applicable to covered positions.  If the determination of the director would result in an adjustment in rates of basic pay applicable to covered positions, any action by the Under Secretary under the preceding sentence shall be made before the effective date of such pay adjustment.  Upon such action by the Under Secretary, any adjustment shall take effect on the first day of the first pay period beginning after such action.  The Secretary shall ensure that the Under Secretary establishes a mechanism for the timely exercise of the authority in this paragraph.

39

**(4)**  Each director of a Department health-care facility shall provide to the Secretary, not later than July 31 each year, a report on staffing for covered positions at that facility.  The report shall include the following:

**(A)**  Information on turnover rates and vacancy rates for each grade in a covered position, including a comparison of those rates with the rates for the preceding three years.

**(B)**  The director's findings concerning the review and evaluation of the facility's staffing situation, including whether there is, or is likely to be, in accordance with criteria established by the Secretary, a significant pay-related staffing problem at the facility for any grade of a covered position and, if so, whether a wage survey was conducted, or will be conducted with respect to that position.

**(C)**  In any case in which the director conducts such a wage survey during the period covered by the report, information describing the survey and any actions taken or not taken based on the survey, and the reasons for taking (or not taking) such actions.

**(D)**  In any case in which the director conducts such a wage survey during the period covered by the report and makes adjustment in rates of basic pay applicable to one or more covered positions at the facility, information on the methodology used in making such adjustment or adjustments.

**(E)**  In any case in which the director, after finding that there is, or is likely to be, in accordance with criteria established by the Secretary, a significant pay-related staffing problem at that facility for any a covered position, determines not to conduct a wage survey with respect to that position, a statement of the reasons why the director did not conduct such a survey.

**(6)(A)**  Upon the request of an individual described in subparagraph (B) for a report provided under paragraph (4) with respect to a Department health-care facility, the Under Secretary for Health or the director of such facility shall provide to the individual the most current report for such facility provided under such paragraph.

 **(B)**  An individual described in this subparagraph is--

 **(i)** an individual in a covered position at a Department health-care facility; or

 **(ii)** a representative of the labor organization representing that individual who is designated by that individual to make the request.

**(g)**  For the purposes of this section, the term "health-care facility" means a medical center, an independent outpatient clinic, or an independent domiciliary facility.

<u>Occupations Covered:</u>

Individuals performing direct patient-care services or services incident to direct patient-care services (as prescribed by 5 U.S.C. 5371) employed as registered nurses and nurse anesthetists.

<u>HHS Responsibilities:</u>

A.    HHS must coordinate with other departments and agencies using nurse locality pay provisions or special salary rates for nurses to assure that multiple contacts are not made with non-Federal facilities to obtain the same information and to

assure that no Federal facility has an unacceptable competitive advantage over another.

B.    HHS must assure that surveys are made of a representative sample of the non-Federal employees in the relevant labor market.

C.    Ensure the confidentiality of the salary data collected under this provision in order to comply with 38 U.S.C. 7451(d)(5).

D.    HHS must prepare an annual report to OPM, due by March 31 of the following year, on staffing for positions covered by the nurse locality pay system during the previous calendar year.  The report must include a summary and analysis of the information contained in the most recent reports submitted by HHS facility directors consistent with 38 U.S.C. 7451(e)(4).  The annual report also must include the amount of any pay adjustments under 38 U.S.C. 7451(d) during the preceding 12 months.

OPM Responsibilities:

A.    Periodically evaluate HHS use of this provision for compliance with law including merit system principles.

B.    Ensure that the departments and agencies coordinate use of this provision and share information.

C.    Obtain concurrence from the Department of Justice, prior to the implementation of this section, that the salary data collected to establish nurse locality pay rates may be shared among Federal agencies without violating U.S. antitrust laws.


X.    Pharmacist Executive Pay

Citation:

**38 U.S.C. 7410 (b)**

**§ 7410 Special Incentive Pay for Pharmacist Executives.**

**(b)** Special Incentive Pay for Department Pharmacist Executives- **(1)** In order to recruit and retain highly qualified Department pharmacist executives, the Secretary may authorize the Under Secretary for Health to pay special incentive pay of not more than $40,000 per year to an individual of the Veterans Health Administration who is a pharmacist executive.
**(2)** In determining whether and how much special pay to provide to such individual, the Under Secretary shall consider the following:
**(A)** The grade and step of the position of the individual.

41

**(B)** The scope and complexity of the position of the individual.
**(C)** The personal qualifications of the individual.
**(D)** The characteristics of the labor market concerned.
**(E)** Such other factors as the Secretary considers appropriate.
**(3)** Special incentive pay under paragraph (1) for an individual is in addition to all other pay (including basic pay) and allowances to which the individual is entitled.
**(4)** Except as provided in paragraph (5), special incentive pay under paragraph (1) for an individual shall be considered basic pay for all purposes, including retirement benefits under chapters 83 and 84 of title 5, and other benefits.
**(5)** Special incentive pay under paragraph (1) for an individual shall not be considered basic pay for purposes of adverse actions under subchapter V of this chapter.
**(6)** Special incentive pay under paragraph (1) may not be awarded to an individual in an amount that would result in an aggregate amount of pay (including bonuses and awards) received by such individual in a year under this title that is greater than the annual pay of the President.

Occupations Covered:

Individuals performing direct patient-care services or services incident to direct patient-care services (as prescribed by 5 U.S.C. 5371) employed as pharmacist executives. Pharmacist executive pay may not be paid to a member of the Senior Executive Service.

HHS Responsibilities:

If the Secretary or his/her designee deems it necessary to provide employees who are serving in pharmacist executive positions with special pay, then he/she must authorize special pay in accordance with section 7410(b).  HHS official policies that describe eligibility for pharmacist executive pay must be applied consistently to the civilian pharmacist executives covered by this provision and follow merit system principles.

OPM Responsibilities:

Periodically evaluate HHS use of these provisions for compliance with law and the delegation agreement.