# In the United States Court of Federal Claims

| | |
|---|---|
| JILLIAN LESKO,<br><br>            *Plaintiff*,<br><br>v.<br><br>THE UNITED STATES,<br><br>            *Defendant*. | No. 22-715C<br>(Filed: March 21, 2023)<br><br>Employment; Title 5; Title 38; Office of Personnel Management; Inducement; Overtime |

*Michael Morrison*, Alexander, Morrison, and Fehr LLP, Los Angeles, CA, for Plaintiff.

*Kelly Geddes*, Civil Division, United States Department of Justice, Washington, DC, for Defendant.

**OPINION AND ORDER**

**LERNER**, *Judge*.

    Plaintiff, Ms. Jillian Lesko, served her country as a nurse practitioner for the Indian Health Service ("IHS") during eight months of the COVID-19 pandemic. Am. Compl. ¶¶ 1, 4, ECF No. 9. She brings this case on behalf of herself and all those similarly situated. *Id.* at ¶ 1.

    Ms. Lesko alleges that she was denied various pay enhancements in violation of (1) 38 U.S.C. § 7453 (miscellaneous compensation benefits); (2) 5 U.S.C. §§ 5542–43 and 5 C.F.R. §§ 550.111–14 (overtime pay); (3) 5 C.F.R. §§ 550.121–22 (nighttime pay); (4) 5 C.F.R. §§ 550.171–72 (Sunday pay); and (5) 5 C.F.R. §§ 550.131–32 (holiday pay). For all of her claims, she seeks backpay under 5 U.S.C. § 5596 if she is "found by appropriate authority . . . to have been affected by an unjustified or unwarranted personnel action." 5 U.S.C. § 5596(b)(1).

    Before the Court is Defendant's Second Motion to Dismiss ("Mot."), ECF No. 15. For the reasons stated below, Defendant's Motion is **GRANTED**, and Ms. Lesko's Amended Complaint is **DISMISSED** for failure to state a claim upon which relief may be granted. Ms. Lesko was not a Title 38 employee and, therefore, was ineligible to receive additional pay pursuant to 38 U.S.C. § 7453. Her argument under 5 U.S.C. §§ 5542–43 also fails because the statute does not provide for recovery under an inducement theory. Lastly, Ms. Lesko cannot recover for nighttime, Sunday, and holiday pay because she does not allege that this work was scheduled in advance as required by Office of Personnel Management ("OPM") regulations.

1

**I.    Background**

Between November 9, 2020, and July 21, 2021, Ms. Lesko worked as a Supervisory Advanced Practice Registered Nurse for the IHS—a division of the Department of Health and Human Services ("HHS").  Am. Compl. ¶¶ 1, 4, ECF No. 9; Mot. at 2.  Ms. Lesko performed both clinical and administrative duties to assist Native American youth experiencing issues with alcohol and substance abuse.  Def.'s App. to Mot. to Dismiss ("Def.'s App.") at Appx27–37.  She worked at two IHS hospitals located in Phoenix, Arizona, and Wadsworth, Nevada.  Am. Compl. ¶ 4.  IHS hired and paid Ms. Lesko at a GS-13, step 10 level.  *Id.* at Appx8.  When she started this position with IHS, Ms. Lesko had "over 18 years of experience in healthcare [and] over 10 years of experience as a nurse."  *Id.* at Appx10.  She was board certified by both the American Nurses Credentialing Center and the American Academy of Nurse Practitioners as a Family Nurse Practitioner from January 2016 through January 2021.  *Id.* at Appx15–16.  She holds a Master of Science degree in Nursing from the University of Southern Alabama.  *Id.* at Appx13–16.

As public-sector nurses during the height of the COVID-19 pandemic, Ms. Lesko and her peers bore the brunt of the crisis.  Am. Compl. ¶ 43.  To meet the exigencies of that unique moment, Ms. Lesko frequently worked long hours.  *See id.* at ¶¶ 26–27.  Twenty-four hours per day, seven days per week, the IHS electronic health record system alerted her with patient updates.  *Id.* at ¶¶ 44, 45, 47.  Often, those updates "require[d] immediate responses," *id.* at ¶ 44, or at least "timely" responses pursuant to IHS policies and procedures, *id.* at ¶ 48.  Ms. Lesko and other nurses were also required to transmit patient related information on paper and via fax and email.  *Id.* at ¶ 46.  She claims that she often needed to respond to patient notes and records within 48 to 72 hours.  *Id.* at ¶ 50.  Ignoring these alerts could have risked the health and well-being of patients and compromised her compliance with the standard of care required of nurses.  *Id.* at ¶¶ 48, 50.  Ms. Lesko alleges that the work she was unable to complete during the workday occupied much of her nights, Sundays, and holidays.  *Id.* at ¶¶ 57–60.

Ms. Lesko states that her supervisors knew about her overtime and off-the-clock work.  *Id.* at ¶¶ 50–51, 54.  She describes a work environment wherein she and her coworkers felt compelled to complete unfinished work outside scheduled work hours.  *Id.*  This pressure was only exacerbated by the pandemic.  *Id.* at ¶ 53.  After eight months as an IHS nurse, Ms. Lesko resigned on July 21, 2021.  Def.'s App. at Appx54.

**II.    Statutory Background**

The parties invoke two different employment statutes—Titles 5 and 38 of the United States Code.  *See* 5 U.S.C. § 5301; 38 U.S.C. § 7401.  Each govern the hiring, firing, and compensation of federal employees.  Title 5 covers compensation and benefits for most General Schedule federal employees.  *See* 5 U.S.C. § 5301.  In comparison, Chapter 74 of Title 38 ("Title 38") governs employment within the Department of Veterans Affairs ("VA").  *See* 38 U.S.C. § 7401.  Title 38 provides greater flexibility over personnel decisions to VA leadership and, simultaneously, more competitive pay than Title 5.  *See generally* 38 U.S.C. § 7451 (stating the purpose of this provision is to ensure hiring remains "competitive, on the basis of pay and other employee benefits, with non-Department health-care facilities in the same labor-market").

Both Title 5 and Title 38 increase compensation for overtime, nightwork, holidays, and Sundays. *See* 5 U.S.C. § 5542; 5 C.F.R. §§ 550.111–114, 550.121–125, 550.131–132, 550.171–172. However, Titles 5 and 38 calculate—and label—this increased compensation differently. Under Title 5, the annual rate of basic pay is divided by 2,087 hours of annual work to calculate a "premium pay" rate. *See* 5 U.S.C. § 5504(b)(1). Under Title 38, the annual rate of basic pay is divided by 2,080 hours of annual work to calculate an "additional pay" rate. 38 U.S.C. §§ 7453(a)–(e). This numerical difference informs much of Plaintiff's Amended Complaint and the analysis in Defendant's Motion to Dismiss.

### III. Procedural Background

On June 27, 2022, Plaintiff filed a Complaint for violation of 38 U.S.C. § 7453. Compl. at ¶ 1, ECF No. 1. On October 24, 2022, Defendant moved to dismiss for failure to state a claim. Def.'s First Mot. Dismiss, ECF No. 7. On November 14, 2022, Plaintiff amended her Complaint as a matter of course pursuant to Rule of the Court of Federal Claims ("RCFC") 15(a)(1)(B), thereby mooting Defendant's First Motion to Dismiss. *See* Am. Compl.; Order Dismissing Def.'s First Mot. to Dismiss as Moot, ECF No. 10. Defendant's Second Motion to Dismiss—alongside Plaintiff's Response, ECF No. 18, and Defendant's Reply, ECF No. 19—is currently before this Court.

### IV. Jurisdiction

Plaintiff asserts claims for overtime and off-the-clock pay pursuant to 38 U.S.C. § 7453 and the Tucker Act, 28 U.S.C. § 1491(a). Am. Compl. ¶ 1. If this Court finds Plaintiff ineligible under 38 U.S.C. § 7453, she seeks alternative relief under 5 U.S.C. §§ 5542 and 5543. *Id.* This Court has jurisdiction over claims arising under 38 U.S.C. § 7453 and 5 U.S.C. § 5542. *See Mercier v. United States*, 114 Fed. Cl. 795, 799 (2014) (finding jurisdiction over 38 U.S.C. § 7453); *Oztimurlenk v. United States*, 162 Fed. Cl. 658, 666 (2022) (same); *Austin v. United States*, 124 Fed. Cl. 410 (2015) (same); *Doe v. United States*, 372 F.3d 1347, 1362 (Fed. Cir. 2004) (proceeding with claims under 5 U.S.C. § 5542); *Bishop v. United States*, 77 Fed. Cl. 470, 474 (2007) (same).

However, this Court does not have jurisdiction over 5 U.S.C. § 5543. The Federal Circuit held in *Horvath v. United States* that 5 U.S.C. § 5543 is "discretionary, . . . not money-mandating and [does] not confer jurisdiction" on the Court of Federal Claims. 896 F.3d 1317, 1320 (2018).

### V. Standard of Review

To survive a motion to dismiss for failure to state a claim pursuant to RCFC 12(b)(6), a complaint must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Courts grant a RCFC 12(b)(6) motion to dismiss when "the facts asserted by the claimant do not entitle [plaintiff] to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). When reviewing a motion to dismiss, the Court of Federal Claims accepts "all well-pleaded factual allegations as true and draws all reasonable inferences" in favor of the plaintiff. *Id.*

## VI.    Discussion

### A.    Count I Is Dismissed.

This Count boils down to one central dispute: Was Ms. Lesko a Title 38 employee?  In short, she was not.  Only the VA can hire nurses under Title 38.  38 U.S.C. § 7401 (granting sole authority to hire pursuant to Title 38 to the Secretary of Veterans Affairs).  Ms. Lesko, by contrast, was a nurse for IHS and, therefore, was not a Title 38 employee.

Title 5—the statute which enables IHS to hire nurses—permits discretionary application of certain provisions from Title 38.  5 U.S.C. § 5371.  Therein lies the confusion.  Plaintiff makes a one-for-all and all-for-one argument.  She claims that IHS's decision to apply one Title 38 provision (base pay, 38 U.S.C. § 7455) necessitates the application of Title 38 in its entirety (including premium pay, 38 U.S.C. § 7453).  Am. Compl. ¶ 1.

Title 5 says otherwise.  The Office of Personnel Management may apply "1 or more provisions of . . . [T]itle 38."  5 U.S.C. § 5371(b).  The answer to the operative question—whether Ms. Lesko was a Title 38 employee—is found in the plain language of the statute.  OPM has the authority to cherry-pick Title 38 provisions and apply them piecemeal to Title 5 employees.  However, the choice to apply one Title 38 provision did not, and could not, transform IHS nurses into Title 38 employees.  IHS, as OPM's subdelegate, enjoys the same discretion.  Plaintiff proposes a structure by which delegation somehow dilutes this discretion.  Resp. at 3.  In other words, she acknowledges that OPM can choose to apply provisions of Title 38 but argues IHS does not have that same discretion.  Neither case law, statute, nor regulation support this argument.

OPM authorizes the HHS Secretary to choose "certain [T]itle 38 provisions," including "premium pay."  Am. Compl. at Ex. A (Delegation Agreement between U.S. Office of Personnel Management and Department of Health and Human Services (June 28, 2022)).  The delegation agreement does not permit (nor would the law allow) the HHS Secretary to hire nurses under Title 38.  *Id.* ("OPM is delegating to HHS discretionary use of certain [T]itle 38 provisions that are primarily available to the Department of Veterans Affairs.  If HHS uses one of the authorities in this delegation agreement, the comparable authority in [T]itle 5 is waived.  The provisions listed are . . . provided in 5 U.S.C. [§] 5371.").

The Secretary delegates the "administrative and human resources authorit[y]" to the Assistant Secretary for Administration.  Def.'s App. at Appx3.  The delegation expressly authorizes the Assistant Secretary to provide direction and issue guidance to Operating Divisions—including IHS.  *Id.*  Pursuant to this authorization, the Assistant Secretary delegates "[a]ll human resources line management authority" to IHS.  *Id.* at Appx1.  Nothing in the memoranda tracing discretion from OPM to, ultimately, IHS cabined or changed the statutory permission to choose "one or more" provisions from Title 38 to apply to Title 5 employees.

Simply put, Ms. Lesko was a Title 5 employee benefiting from certain Title 38 provisions.  IHS chose to apply one Title 38 provision and forgo the rest.  *See* Indian Health Service, Pay Systems and Tables, Pay Systems Authorized Under Title 38 of the United States Code, Title 38 Special Salary Rates (Oct. 17, 2022) ("IHS has authorized higher rates of basic

pay than regular GS locality rates for certain health care occupations based on documented recruitment and retention issues and in compliance with Title 38 statutory criteria."). There is no statutory provision or other authority preventing IHS from doing so. For these reasons, Count I of the Amended Complaint is dismissed.

### B. Count II Is Dismissed.

For reasons similar to Count I, Count II must also be dismissed. Count II alleges that Plaintiff is entitled to premium pay for overtime induced by her supervisors. Am. Compl. ¶¶ 81–91; Resp. at 10–14. However, her argument rests on the supposition that she was a Title 38 employee. Am. Compl. ¶¶ 12–25 ("The statutory requirements outlined in 38 U.S.C. § 7451 provide for increases in the rates of basic pay for [nurses] when compared to Title 5 employees." *Id.* at ¶ 14.). Having held that Ms. Lesko was not a Title 38 employee, the Court dismisses Count II for failure to state a claim.

In the alternative, Ms. Lesko argues she is entitled to relief under Title 5. However, Title 5 requires written authorization for overtime. *Doe v. United States*, 372 F.3d 1347, 1362 (Fed. Cir. 2004). Plaintiff contends she can recover despite this requirement and cites *Mercier v. United States*, 786 F.3d 971, 982 (Fed. Cir. 2015), to support her claim. Resp. at 10. But *Mercier* is inapposite. In *Mercier*, the plaintiffs successfully recovered for after-hours work under an inducement theory of overtime. 786 F.3d at 982. Under inducement theory, employees may still recover for overtime work expected, required, or induced by other means, even when an employer has not approved the overtime in writing. *See, e.g.*, *Anderson v. United States*, 136 Ct. Cl. 365, 370 (1956). Unlike Ms. Lesko, however, the *Mercier* plaintiffs were VA employees hired under Title 38. *Id.* at 972. As such, *Mercier* only applies in the context of Title 38. *See Mercier*, 786 F.3d at 982. Because Ms. Lesko was a Title 5 employee, resolution of this issue turns on whether Title 5—not Title 38—permits recovery under inducement theory. It does not.

To begin, Plaintiff reads *Mercier* too broadly. Resp. at 10–14. Because the language "officially ordered or approved" is identical in Titles 5 and 38, *Mercier* conformed to the precedent in *Anderson* that induced overtime is "officially ordered or approved." *See Mercier*, 786 F.3d at 982 ("We therefore hold that *Anderson*'s interpretation of 5 U.S.C. § 5542, namely that overtime is 'officially ordered or approved' where it is induced by one with the authority to order or approve overtime but not expressly directed, remains good law.").

However, *Mercier* and *Anderson* have limited applicability. They apply only when the agency has not yet issued a regulation interpreting "officially ordered or approved." *Id.* ("Thus, our current clarification of *Doe* does not in any way undermine its holding that the regulation was entitled to *Chevron* deference."). When an agency issues regulations implementing Title 5, courts afford *Chevron* deference to the agency's interpretation. *E.g.*, *Doe*, 372 F.3d at 1362.

In *Anderson*, the Federal Circuit invalidated the relevant regulation and interpreted the statute as though no regulation were in effect. *Mercier*, 786 F.3d at 981 (interpreting *Anderson*) ("*Anderson* held the regulation invalid and accordingly considered the full scope of the statutory right."). It applied general principles of statutory interpretation and read Title 5 to "encompass[] forms of order or approval that might by their nature never be put in writing," i.e., inducement theory. *Mercier*, 786 F.3d at 981 (describing *Anderson*); *see Anderson*, 136 Ct. Cl. at 371 ("The

withholding of written orders or approval reflected observance of the letter of the regulation but denial of the substance of the statute."). *Anderson*'s interpretation of Title 5 controls only in the narrow circumstance where an agency's implementing regulation has not yet interpreted Title 5.

Similarly, in *Mercier*, "no procedural regulations [had] interpret[ed] the Title 38 overtime provision," so the Federal Circuit held "that *Anderson*'s interpretation of [Title 5] that overtime is 'officially ordered or approved' where it is induced . . . remains good law." *Mercier*, 786 F.3d at 979, then at 982 (citing *Anderson*, 136 Ct. Cl. at 370). *Anderson* and its progeny "remain good law" in the narrow scenario where an agency has not yet interpreted the statute. When an agency has, *Chevron*—not *Anderson*—governs.

In one such case, the Federal Circuit had occasion to review OPM's construction of Title 5's overtime provision. At *Chevron* Step Two, the court in *Doe* deferred to "OPM's view that [Title 5's] 'ordered or approved' language can reasonably be interpreted to require a more formal means of authorization," i.e., written approval. 372 F.3d at 1361–62 (holding that OPM permissibly constructed Title 5 to proscribe inducement theory). The same regulation in *Doe* is now in question and, as in *Doe*, the same result prevails.

The Court follows *Doe*'s lead and restates its holding that OPM regulation 5 C.F.R. § 550.111 is a permissible construction of Title 5's overtime provision. *Id.* at 1362 ("[T]he OPM regulation interprets an ambiguous statute that it was expressly authorized to administer. OPM's construction of the phrase 'ordered or approved,' as requiring written authorization, is reasonable and entitled to *Chevron* deference because it comports with, and indeed furthers, the language and purpose of [Title 5]."). *Doe* itself did not interpret Title 5, nor did it have cause to. *See Mercier*, 786 F.3d at 981 (explaining the limited holding in *Doe*). It stands for the limited proposition that *Anderson* does not apply—and *Chevron* does—when an agency has already interpreted Title 5 and regulated pursuant to that interpretation. *Id.* ("Where *Anderson* . . . considered the full scope of the statutory right, *Doe* enforced the writing regulation and had no cause to consider whether the phrase . . . encompassed forms of order or approval that might by their nature never be put 'in writing.' The question before us today—whether overtime may be 'ordered or approved' by inducement, albeit under a different statute—was simply never considered by the *Doe* court.").

In that regard, *Doe* controls when a court reviews OPM's interpretation of Title 5. *See, e.g.*, *Aletta v. United States*, 70 Fed. Cl. 600, 604 (2006) (applying *Doe*) ("OPM, and before it the Civil Service Commission, have had substantially the same regulation since 1945 regarding . . . 5 C.F.R. § 550.111(c). The Federal Circuit has found this regulation to be a valid and enforceable exercise of OPM's authority to implement [Title 5]."); *Bishop v. United States*, 77 Fed. Cl. 470, 474 (2007) (same) ("[P]laintiffs were not entitled to overtime compensation because, with the exception of certain post orders, they could not present evidence showing that the overtime was ordered or approved in writing.").

If Plaintiff were a Title 38 employee, then *Mercier* would control. *See, e.g.*, *Oztimurlenk v. United States*, 162 Fed. Cl. 658, 666–67 (2022) (invoking *Mercier* in a Title 38 action); *Coyner v. United States*, 161 Fed. Cl. 677, 684 (2022) (same). But she is not. So, *Mercier* and its interpretation of "officially ordered or approved" are of no moment. Instead, the instant case turns on the same regulation in *Doe*—5 C.F.R. § 550.111. The Court is thus obligated to reject

Plaintiff's inducement theory. Unless Plaintiff can allege that her overtime work was approved in writing, no remedy is available.

Plaintiff also includes an argument about compensatory time. When employees work hours in excess of their "scheduled tour of duty," they may be granted "compensatory time off" instead of payment for that work. 5 U.S.C. § 5543(a)(2). Specifically, Ms. Lesko claims that she was "routinely required to take compensatory time in lieu of overtime pay without [her] consent and without [her] having voluntarily requested such comp[ensatory] time credit in writing." Am. Compl. ¶ 63. That requirement, however, is found only in Title 38 and nowhere in Title 5. 38 U.S.C. § 7453(e)(3).

Instead, Title 5 gives the agency discretion whether to grant compensatory time without the procedural hurdles included in Title 38. 5 U.S.C. § 5543(a)(2); *see also Doe*, 372 F.3d at 1351 (Fed. Cir. 2004) ("[Title 5] allows the head of an agency to 'grant [an] employee compensatory time off from his scheduled tour of duty instead of payment under section 5542.'"). This discretion precludes this Court's review entirely. The Federal Circuit held in *Horvath* that 5 U.S.C. § 5543 is "discretionary, . . . not money mandating, and could not confer jurisdiction" on the Court of Federal Claims. 896 F.3d at 1320.

For the aforementioned reasons, Count II of the Amended Complaint is dismissed.

### C. Counts III–V Are Dismissed.

Having found that Plaintiff was a Title 5 employee without the ability to recover under inducement theory, the Court dismisses Counts III through V for failure to state a claim.

Plaintiff's argument is split into two contentions. First, Ms. Lesko asserts she was not compensated correctly for nighttime, Sunday, and holiday work. Am. Compl. ¶¶ 58–61. However, Plaintiff seemingly concedes that IHS calculated her pay correctly under Title 5. *Id.* at ¶ 23 ("Plaintiff's . . . hourly rate of basic pay would be proper if the workers were being paid according to Title 5."), ¶ 25 ("IHS calculated a lower hourly rate of basic pay for all [nurses] and then applied that lower hourly rate when calculating additional pay."). Her sole complaint is that IHS miscalculated her pay under Title 38, which she maintains as part of her bid for Title 38 status. *Id.* For the same reasons Count I must be dismissed, this claim also fails.

Ms. Lesko next contends that she did not receive premium pay for work performed at night, on Sundays, and on holidays. *See* Am. Compl. ¶¶ 95–98, 101–106, 109–13. To qualify for premium pay, OPM regulations require that all nighttime, Sunday, and holiday work be scheduled in advance. *See* 5 C.F.R. § 550.121 ("[N]ightwork is *regularly scheduled* work performed by an employee." (emphasis added)); 5 C.F.R. § 550.131 ("Sunday work means nonovertime work performed by an employee during a *regularly scheduled* daily tour." (emphasis added)); 5 C.F.R. § 550.131 ("Holiday work means nonovertime work performed by an employee during a *regularly scheduled* daily tour." (emphasis added)). Plaintiff does not claim this work was scheduled in advance. Rather, she suggests that her work was induced by supervisors: "Defendant wrongfully, willfully, regularly and routinely informed Plaintiff[] . . . that work alleged herein was required, necessary and critical to satisfactory patient care." *Id.*

7

at ¶¶ 97, 105, 113.  Plaintiff again relies on an inducement theory of recovery.  Resp. at 17 ("[S]uch work was . . . induced.").  But applicable regulations do not support this argument.

Definitionally, Ms. Lesko did not complete nightwork, Sunday work, or holiday work.  The regulation defines all three categories as "regularly scheduled work."  5 C.F.R. § 550.121.  Ms. Lesko explicitly acknowledges that her work was unscheduled.  *See* Am. Compl. ¶ 43 ("[N]urses were required to work long hours, well over their regularly scheduled tours of duties."), ¶ 45 (alleging that nurses utilized electronic health record systems to manage patient care "after their tours of duty"), ¶ 49 ("Managing, responding to and/or otherwise working after tours of duty constitutes compensable work."), ¶ 51 ("[S]upervisors and management know that employees are working after tours of duty are completed."), ¶ 53 ("Plaintiffs and class members have not been able to . . .  complete all necessary and required patient work during their regularly scheduled tours of duty" and "were often required to stay after tours of duty ended."), ¶ 54 ("[I]t is often impossible to complete all required work and paperwork during normally scheduled tours of duty.").

Though the result of this narrow requirement may have unfairly impacted healthcare workers who worked irregular hours, this Court cannot grant the relief requested either at law or in equity.  In *Aviles v. United States*, the Federal Circuit's predecessor court—the Court of Claims—treated unscheduled work as though it had been scheduled.  *See* 151 Ct. Cl. 1, 8 (1960).  There, the Agricultural Research Service paid its meat inspectors for forty-hour, five-day weeks.  *Id.*  In actuality, the employees regularly worked days "lasting . . . until the processing plant completed its recurring overtime" well beyond forty-hours.  *Id.* (emphasis omitted).  The meat inspectors stayed at the plant on a daily basis beyond the scheduled eight-hour workday, as a group.  *Id.*  The employer refused to schedule this regular overtime for fear that "payment might have to be made for overtime hours scheduled but not actually worked."  *Id.*  So, the Court of Claims treated recurrent, daily, but unscheduled overtime as regularly scheduled.  *Id.* at 9.

Unlike in *Aviles,* much of Ms. Lesko's off-the-clock work was impossible to schedule in advance.  Plaintiff alleges, for instance, that "alerts and notifications . . . [could] be sent at any time during a 24 hour period, 7 days a week."  Am. Compl. ¶¶ 44–51.  This type of overtime was not present in *Aviles*.  The Court of Claims later explained that the *Aviles* plaintiff "was called upon regularly to perform night work [which] . . . could have and indeed should have been formally scheduled."  *Burich v. United States*, 177 Ct. Cl. 139, 147 (1966) (describing *Aviles*).  IHS could not have "formally scheduled workweeks . . . which included the overtime . . . it knew would be required," *Aviles*, 151 Ct. Cl. at 8, when much of the additional work revolved around "patient emergencies" "at any time," Am. Compl. ¶ 47.  Plaintiff does not allege that her off-the-clock work followed an "actual, controllable" pattern as in *Aviles* and *Burich*.  Nothing in her Amended Complaint suggests her additional work could be formally scheduled.  *See Medrano v. United States*, 161 Fed. Cl. 207, 209 (2022) (denying motion to dismiss because plaintiffs alleged that their off-the-clock work could be scheduled).

Eventually, OPM codified *Aviles*' equitable holding in 5 C.F.R. § 610.121(b)(3).  *Id.* at 208–09 (stating that OPM "in effect codif[ied] *Aviles*").  "If . . . an agency should have scheduled a period of work as part of the employee's regularly scheduled administrative workweek and failed to do so . . . the employee shall be entitled to . . . premium pay for that period of work as regularly scheduled work."  5 C.F.R. § 610.121(b)(3).  However, license to

8

retroactively schedule unscheduled work is restricted by the agency's "knowledge of the specific days and hours of the work requirement in advance." *Id.*

Here, the alleged facts belie "knowledge of the specific days and hours." *Id.* Plaintiff contends that supervisors "had knowledge that off-the-clock work was occurring on a recurrent and continuous basis." Resp. at 17. But knowledge of recurrent off-the-clock work is insufficient. The regulation requires advanced knowledge of "specific days and hours" that such work is occurring, 5 C.F.R. § 610.121(b)(3), as in *Aviles* where employees remained at work en masse for predictable hours, 151 Ct. Cl. at 8. There are no allegations of such knowledge in the Amended Complaint. Accordingly, Counts III through V are dismissed.

### VII. Conclusion

Ms. Lesko worked for eight months as a government nurse during a global pandemic. Despite irregular and excessive overtime and off-the-clock work, binding precedent precludes relief. Previously, the Federal Circuit explained that its deference to OPM and its interpretation of Title 5 are designed to protect the public treasury from unanticipated spending. *See Doe*, 372 F.3d at 1356. While fiscal responsibility is certainly an important consideration, it should not be the only consideration. OPM may benefit from weighing guardrails on spending against (1) the demands of healthcare work in the twenty-first century (particularly during a pandemic); (2) hiring and retaining competitive workers; and above all (3) fairness for healthcare workers regardless of the statute under which they are hired.

Plaintiff's Amended Complaint is **DISMISSED** without prejudice. The Clerk of the Court is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

s/ Carolyn N. Lerner<br>
CAROLYN N. LERNER<br>
Judge